## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

BRUCE BEHRENS, KATHLEEN BEHRENS,
SHERRI SCHEFFERT AND DAVID SCHEFFERT,
RICHARD WAKEFORD on behalf of themselves and all
other similarly situated,

     Plaintiffs,

     **-against-**

JPMORGAN CHASE BANK, N.A., U.S. BANK, N.A.,
CHICAGO MERCANTILE EXCHANGE, INC., THE
CME GROUP INC., MILLENNIUM TRUST COMPANY
a/k/a MILLENNIUM TRUST CO. LLC, RUSSELL
WASENDORF, RUSSELL WASENDORF, JR., STEVEN
BREWER a/k/a STEVEN JOHN BREWER, GARLON
MAXWELL, AMBER MAXWELL, PERRY COMEAU,
John Does #1-40,

     Defendants.

-------------------------------------------------------------------x

                           **1:16-cv-05508 (VSB)**

                **MEMORANDUM OF LAW
IN SUPPORT OF
MILLENNIUM'S
MOTION TO STAY
PLAINTIFFS' AMENDED
COMPLAINT PENDING
ARBITRATION**

        Millennium Trust Company, LLC ("Millennium") respectfully requests that this Court stay all claims against it because each of the five named plaintiffs (collectively, the "Plaintiffs" and each, a "Plaintiff") entered into written agreements that require that all disputes between Millennium and each of the Plaintiffs be arbitrated.  Millennium respectfully submits this Memorandum in support of its Motion.

## Table of Contents

**OVERVIEW** ..................................................................................................... 3

**SUMMARY OF ARGUMENT** ......................................................................... 4

**BACKGROUND** ............................................................................................... 5

   I.   MILLENNIUM IS A QUALIFIED DIRECTED CUSTODIAN UNDER SECTION 408(H) OF THE INTERNAL REVENUE CODE. ....................................................... 5

   II.  EACH PLAINTIFF EXECUTED A WRITTEN AGREEMENT THAT WAS ESSENTIAL TO THE CREATION OF HIS/HER SELF-DIRECTED IRA, AND THAT GOVERNED HIS/HER RELATIONSHIP WITH MILLENNIUM. ...................... 5

   III.   PLAINTIFFS' RESPECTIVE CUSTODIAL AGREEMENTS WITH MILLENNIUM REQUIRE THEM TO SUBMIT TO MANDATORY, BINDING ARBITRATION. ........... …8

     A.   The arbitration provisions contained in the Custodial Agreements in effect at the time when Plaintiffs Bruce Behrens, Kathleen Behrens, Sherri Scheffert and David Scheffert left Millennium require arbitration. ......................................................................... 8

     B.   The arbitration provision contained in the Custodial Agreement applicable to Plaintiff Richard Wakeford requires arbitration. ........................................................... 8

**ARGUMENT** ..................................................................................................... 9

   I.   THE FAA GOVERNS THIS DISPUTE AND EVINCES A LIBERAL FEDERAL POLICY FAVORING ARBITRATION. ........................................................... 9

   II.  THE ARBITRABILITY OF PLAINTIFF WAKEFORD'S CLAIMS SHOULD BE DECIDED BY THE ARBITRATOR, NOT THIS COURT, AND HIS CLAIMS SHOULD BE STAYED ON THAT BASIS ALONE. ..................................................... 10

   III.   ALL CLAIMS ASSERTED BY ALL PLAINTIFFS AGAINST MILLENNIUM ARE SUBJECT TO BINDING ARBITRATION. ............................................... 13

     A.   The arbitration provision between Plaintiffs and Millennium is a valid part of the parties' contracts. ............................................................................... 14

     B.   All of the claims attempted against Millennium are within the arbitration provisions' broad scope. ..................................................................................... 17

**CONCLUSION** ............................................................................................... 20

**OVERVIEW**

In early 2007, Plaintiffs established self-directed individual retirement accounts ("Self-Directed IRAs") with Millennium, which is a qualified directed custodian of such accounts under the Internal Revenue Code, allowing Plaintiffs to gain specific tax advantages.  In creating their respective Self-Directed IRAs at Millennium, each Plaintiff executed a written agreement that defined the relationship between each Plaintiff and Millennium, including requiring binding arbitration of all disputes.

Plaintiffs filed the instant suit on July 11, 2016 against fifty different defendants (the "Defendants").  Pursuant to this Court's directive at the status conference held on July 21, 2017, Plaintiffs' counsel was provided, on July 24, 2017, with Adoption Agreements signed by each of the Plaintiffs as well as the relevant Custodial Agreements which mandate arbitration.  Rather than pursue their claims in arbitration, Plaintiffs ignored these agreements for a second time, and proceeded to file an Amended Complaint on October 11, 2017 which failed to attach the relevant agreements.

In their Amended Complaint, Plaintiffs allege that all fifty Defendants somehow conspired to allow Defendant Russell Wasendorf, Senior ("Defendant Wasendorf, Senior") to steal from Plaintiffs' segregated customer accounts. (Amended Complaint, Dkt. No. 79[1] at ¶ 10.)  Dubbing this the "RICO Ponzi Scheme," Plaintiffs assert that Defendants' so-called conspiracy violated the Racketeer Influenced and Corrupt Organizations Act (Counts Twenty-Six and Twenty-Seven), and that each Defendant also violated various other federal and state laws.  (*Id*. at ¶¶ 9-10; *see generally*, Amended Complaint.)  With respect to Millennium, the additional claims are aiding and

---

[1] Plaintiffs also filed a document captioned "Amended Complaint" as Dkt. 78.  Millennium presumes that the Amended Complaint filed as Dkt. 79 replaces the document filed as Dkt. 78.

abetting violations of the Commodity Exchange Act (Count Sixteen), breach of contract under federal law (Count Seventeen), breach of fiduciary duty under federal law (Count Eighteen), breach of contract under state law (Count Nineteen), breach of fiduciary duty under state law (Count Twenty), and ordinary and gross negligence (Count Twenty-One). Plaintiffs further assert claims, against all Defendants, for vicarious liability (Count One), unjust enrichment and restitution (Count Twenty-Two), intentional infliction of emotional distress (Count Twenty-Three), and punitive damages (Count Twenty-Four).

Millennium has not engaged in any wrongdoing and vigorously denies any liability as Plaintiffs' allegations against Millennium are wholly unsupported by either fact or law. Nevertheless, any issues of liability must be resolved in arbitration because all purported claims attempted against Millennium fall squarely within the arbitration clauses to which each Plaintiff agreed to be bound. Accordingly, this Court should enforce Plaintiffs' agreements to arbitrate – not litigate in federal court – any claims against Millennium, and stay these proceedings against Millennium pending arbitration.

## SUMMARY OF ARGUMENT

Millennium is a qualified directed custodian of Self-Directed IRA's under §408(h) of the Internal Revenue Code. Each Plaintiff established a Self-Directed IRA at Millennium in early 2007. Each Plaintiff agreed in writing to the terms of the Self-Directed IRA Adoption Agreement and the incorporated Self-Directed IRA Custodial Agreement. As permitted by the IRS, the Custodial Agreement contains a mandatory and binding arbitration clause for any and all disputes arising out of a Self-Directed IRA maintained at Millennium in lieu of this pending litigation. Therefore, this action should be stayed until each party submits to and completes the mandatory and binding arbitration as required by the Self-Directed IRA Custodial Agreements.

**BACKGROUND**

## I.     MILLENNIUM IS A QUALIFIED DIRECTED CUSTODIAN UNDER SECTION 408(H) OF THE INTERNAL REVENUE CODE.

Millennium is a privately-held company with its headquarters and principal place of business in Oak Brook, Illinois, and is a qualified directed custodian of Self-Directed IRAs under Section 408(h) of the Internal Revenue Code ("Revenue Code"). (*See* Affidavit of Jeanne Reder ("Reder Aff.") attached  and incorporated herein, at ¶¶ 2-3.) Because Millennium is a qualified directed custodian, and because Millennium pursuant to the IRA agreements merely follows the clients' directives with respect to any investment decisions, its clients are responsible for selecting, investigating, and monitoring their own investments. (*Id.* at ¶ 3.)  As a result, Millennium's limited role as a passive custodian is to custody its clients' investments consistent with the Revenue Code so that the clients may obtain the tax advantages they seek. (*Id.*)  For its services as a qualified directed custodian, Millennium charges a minimal fee that is not based upon investment performance or value, and thus has limited duties and responsibilities, limited liability, and requires arbitration to limit litigation costs. (*Id.*)

## II.     EACH PLAINTIFF EXECUTED A WRITTEN AGREEMENT THAT WAS ESSENTIAL TO THE CREATION OF HIS/HER SELF-DIRECTED IRA, AND THAT GOVERNED HIS/HER RELATIONSHIP WITH MILLENNIUM.

Each Plaintiff established a Self-Directed IRA at Millennium in early 2007.  (Reder Aff., ¶¶ 5-11.)  To create their Self-Directed IRAs, each Plaintiff agreed to be bound by Millennium's Self-Directed IRA agreements, which included the Self-Directed IRA Adoption Agreement (the "Adoption Agreement") and the Self-Directed IRA Custodial Agreement ("Custodial Agreement"). (*See* Reder Aff. at ¶ 5 and Exs. 1-5; *see also* Affidavit of Jean Moran ("Moran Aff."), attached hereto  and incorporated herein, at ¶¶ 4, 15-19 and Ex. 6.)

In establishing a Self-Directed IRA at Millennium, each of the five named Plaintiffs executed an Adoption Agreement. (*See* Reder Aff. at ¶¶ 7-11, Exs. 1-5.)   The Adoption Agreements signed by each Plaintiff are as follows:

| Plaintiff | Effective | Left MTC | Reder Aff., at Ex. |
|-----------|-----------|----------|--------------------|
| Bruce Behrens | March 30, 2007 | December 31, 2010 | 1 |
| Kathleen Behrens | April 4, 2007 | June 30, 2010 | 2 |
| David Scheffert | April 9, 2007 | October 20, 2009 | 3 |
| Sherri Scheffert | April 5, 2007 | January 27, 2009 | 4 |
| Richard Wakeford | April 10, 2007 | June 9, 2017 | 5 |

When they did so, each Plaintiff expressly acknowledged that he/she also received a copy of the Custodial Agreement and accompanying Disclosure Statement, that he/she understood it, and that he/she would be bound by its terms. (Reder Aff. at Exs. 1-5, p. 3.)   The Custodial Agreement, in turn, reiterates that it is an agreement between Millennium and each person who executes an Adoption Agreement, and again states that the Adoption Agreement each Plaintiff signed incorporates the terms of the Custodial Agreement. (*See, e.g.,* Moran Aff. at Exs. 6-14, p. 1.)   The relevant Custodial Agreements are as follows:

| Effective From | Effective To | Moran Aff., at Ex. |
|----------------|--------------|--------------------|
| February 2007 | April 2008 | 6 |
| April 2008 | December 2009 | 7 |
| December 2009 | November 2010 | 8 |
| November 2010 | February 2012 | 9 |
| February 2012 | March 2013 | 10 |
| March 2013 | February 2014 | 11 |
| February 2014 | January 2015 | 12 |
| January 2015 | January 2016 | 13 |
| January 2016 | Present | 14 |

The Adoption Agreement's incorporation of the Custodial Agreement's terms is necessary, in several critical respects.   First, it is required to establish the Self-Directed IRAs in accordance with the Revenue Code. (*See generally*, Moran Aff. at Exs. 6-14.)   Indeed, to qualify as a Self-Directed IRA under Section 408(h) of the Revenue Code – and, thus, to allow account owners like

Plaintiffs to obtain the tax advantages they seek – the account must be based upon a written instrument that meets the requirements for a traditional individual retirement account under Section 408(a) of the Revenue Code. *See* 26 C.F.R. § 1.408-2(d); *see also* 26 U.S.C. § 408(h); 26 U.S.C. § 408(a). Millennium's Custodial Agreement contains the necessary provisions to satisfy Sections 408(h) and (a) of the Revenue Code. To that end, Millennium's Custodial Agreement reflects the provisions from Internal Revenue Service ("IRS") Form 5305-A, which is the model custodial agreement approved by the IRS, as well as adds additional provisions as is permitted by the IRS and Form 5305-A. (*See* Moran Aff. at Exs. 6-14; *see also* IRS Form 5305-A (Rev. March 2002) *available at* http://www.irs.gov/pub/irs-pdf/f5305a.pdf (accessed on November 8, 2017)). One of the additional, permissible provisions added by Millennium is an arbitration clause.

Second, the Adoption Agreement and Custodial Agreement together set forth the fundamental contractual terms governing the parties' relationship. These agreements provide that, in setting up the Self-Directed IRAs, each Plaintiff is solely responsible for selecting his/her own investments, including investigating the person or company offering the investment, as well as directing his/her own investment accounts. (*See* Reder Aff. at Exs. 1-5, p. 3; *see generally*, Moran Aff. at Exs. 6-14.) The agreements further evidence that Millennium – as merely a qualified directed custodian – did not offer investment advice or exercise discretion and, as such, would not have any liability for losses or damages that any Plaintiff may incur as a result of his/her investment decisions. (*Id.*) To the contrary, Plaintiffs agreed to indemnify Millennium for any damages that Millennium may incur as a result of Plaintiffs' investment decisions. (*Id.*)

III.   **PLAINTIFFS' RESPECTIVE CUSTODIAL AGREEMENTS WITH MILLENNIUM REQUIRE THEM TO SUBMIT TO MANDATORY, BINDING ARBITRATION.**

    **A. The arbitration provisions contained in the Custodial Agreements in effect at the time when Plaintiffs Bruce Behrens, Kathleen Behrens, Sherri Scheffert and David Scheffert left Millennium require arbitration.**

All five Plaintiffs have severed their contractual relationship with Millennium. ( Reder Aff. at ¶¶ 7-10; Moran Aff. at ¶¶ 15-18.)  Specifically, Plaintiff Bruce Behrens left Millennium in December 2010, Plaintiff Kathleen Behrens left in June 2010, Plaintiff Sherri Scheffert left in January 2009, and Plaintiff David Scheffert left in October 2009. (*Id*.)  The Custodial Agreements in effect when these Plaintiffs left Millennium each contain the same mandatory and unequivocal arbitration provision, which states, in relevant part:

> *. . . disputes between the parties to this Agreement shall first be submitted to private binding arbitration at the demand of either party*. In any arbitration, each party shall appoint one person who is not in its employ or under contract with it to serve as arbitrator, and the two arbitrators shall name a third arbitrator. Except as otherwise agreed by the parties, the Arbitration Rules of the American Arbitration Association shall apply to the arbitration proceeding. *The parties agree that, except below, no court action shall be taken by either party prior to arbitration*, and the majority decision of the arbitration panel shall be binding on both parties and in any subsequent action in court.

(Moran Aff. at Exs. 7-9, Art. XVII (emphasis added).) Notably, this arbitration provision is identical to the one appearing in the Custodial Agreement in effect in early 2007, when each Plaintiff executed his/her Adoption Agreement.  (*See*  Moran Aff. at ¶¶ 15-18; *compare* Exs. 7-9, Art. XVII *with* Ex. 6, Art. XVI.)

    **B. The arbitration provision contained in the  Custodial Agreement applicable  to Plaintiff Richard Wakeford  requires arbitration.**

Over the years Millennium has amended its Custodial Agreement to change – among other things – the arbitration provision, as it was expressly permitted to do under the terms of the parties'

agreement.  (*See*  Moran Aff. at ¶ 5 (explaining that each of Millennium's Custodial Agreements since early 2007, when all five Plaintiffs established their Self-Directed IRAs, expressly permits Millennium to amend the Custodial Agreement at any point and at its discretion); *see also id*. at Exs. 6-14, Art. VII.) As such, the arbitration provision in effect at the time Plaintiff Richard Wakeford left Millennium differs somewhat from the arbitration provision that was in effect when the aforementioned Plaintiffs departed Millennium.

Plaintiff Richard Wakeford left Millennium in June 2017.  (Moran Aff. at ¶ 19.)  The mandatory arbitration provision in the Custodial Agreement in effect at his departure provides, in relevant part, as follows:

> The Account Owner, his or her authorized representatives, or designated beneficiaries and Custodian must first attempt in good faith to resolve by negotiation any dispute arising out of or relating to this Agreement.  In the event that the Account Owner and Custodian are unable to resolve their dispute by negotiation, any controversy, claim, counterclaim, crossclaim, or other dispute arising out of or relating to this Agreement or ***the breach, termination, interpretation or validity thereof, including the determination of the scope or applicability or enforceability of this Agreement to arbitrate***, whether sounding in tort, contract or statute, ***must be settled by individual, confidential, binding arbitration before a sole arbitrator*** . . . .

(Moran Aff. at Ex. 14, Art. XVIII (emphasis added).)

As such, this mandatory arbitration provision applies to Plaintiff Wakeford.

## ARGUMENT

### I.  THE FAA GOVERNS THIS DISPUTE AND EVINCES A LIBERAL FEDERAL POLICY FAVORING ARBITRATION.

The Federal Arbitration Act ("FAA") was enacted "to reverse the longstanding judicial hostility to arbitration agreements . . .  and to place arbitration agreements upon the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  It makes

"written arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629-30 (2009) (quoting 9 U.S.C. § 2).  Any arbitration agreement affecting interstate commerce, such as the one at issue, is subject to its terms.  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

It is "beyond dispute that the FAA was designed to promote arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011).  Indeed, the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), and it evinces a "liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-346 (2011) ("our cases . . . have repeatedly described the [FAA] as 'embodying a national policy favoring arbitration,' and 'liberal federal policy favoring arbitration agreements'").  "This policy, as contained within the [FAA], 'requires courts to enforce the bargain of the parties to arbitrate.'" *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).  By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

## II. THE ARBITRABILITY OF PLAINTIFF WAKEFORD'S CLAIMS SHOULD BE DECIDED BY THE ARBITRATOR, NOT THIS COURT, AND HIS CLAIMS SHOULD BE STAYED ON THAT BASIS ALONE.

As an initial step, a court must first determine *who* – the court or the arbitrator – has the power to decide whether the parties' instant dispute should be arbitrated. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) (noting that "the parties themselves may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable").  Whichever has the

power to answer this question of arbitrability will be the one tasked with deciding whether (1) the parties are bound by a *valid* arbitration clause, and (2) the dispute at issue between the parties is within the *scope* of that arbitration clause. *See, e.g.*, *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) (question of arbitrability means determining "whether a valid agreement or obligation to arbitrate exists," and "whether a given issue falls within the scope of the parties' undertaking to accept arbitration"); *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 72 (2d Cir. 1997) (question of arbitrability refers to deciding "whether there is even a valid agreement to arbitrate in effect at a particular time," and whether a particular dispute between the parties comes within "the scope of the arbitration clause"); *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 71 (2d Cir. 2012) (question of arbitrability means looking to whether valid agreement to arbitrate was formed, and the scope of such an agreement).

Although it is typically the court that answers the question of arbitrability, the parties may instead vest the arbitrator with that power. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-1199 (2d Cir. 1996). As long as there is "clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator," then the arbitrator – not the court – will decide whether the parties' dispute should be submitted to arbitration. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-1199 (2d Cir. 1996) (internal quotations omitted).

The arbitration provision applicable to Plaintiff Wakeford easily satisfies this standard, as it provides, in relevant part, as follows:

> The Account Owner, his or her authorized representatives, or designated beneficiaries and Custodian must first attempt in good faith to resolve by negotiation any dispute arising out of or relating to this Agreement. In the event that the Account Owner and Custodian are unable to resolve their dispute by negotiation, any controversy, claim, counterclaim, crossclaim, or other dispute

> arising out of or relating to this Agreement or ***the breach, termination, interpretation or validity thereof, including the determination of the scope or applicability or enforceability of this Agreement to arbitrate***, whether sounding in tort, contract or statute, ***must be settled by individual, confidential, binding arbitration before a sole arbitrator*** . . . .

(Moran Aff. at Ex. 14, Art. XVIII (emphasis added).)

Not only does the arbitration provision broadly require that "any . . . dispute" concerning the Custodial Agreement be submitted to arbitration (which would include whether any resulting claims are subject to arbitration), but it even specifies that issues pertaining to the "validity" and "scope" of the arbitration agreement are among the issues to be decided at arbitration. (Ex. B, Moran Aff. at Ex. 14, Art. XVIII.)  Each of these is alone sufficient under Second Circuit law to clearly and unmistakably evidence the parties' intent that the question of arbitrability be among the issues decided by the arbitrator, rather than the Court.  *See, e.g.*, *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-1199 (2d Cir. 1996) (holding that the parties clearly and unmistakably intended that the question of arbitrability be decided by the arbitrator because the arbitration provision directed that "any and all" controversies concerning the agreement were to be submitted to arbitration; the court noted that the words "any and all" were "inclusive, categorical, unconditional and unlimited" so as to fairly encompass issues of arbitrability, and stated that an arbitration clause's "broad grant of power to the arbitrators [was] unqualified by any language carving out" issues of arbitrability for resolution by the courts); *Contec Corp. v. Remote Solution, Co., Ltd*, 398 F.3d 205, 208-210 (2d Cir. 2005) (holding arbitration agreement's incorporation of AAA rules designating the arbitrator as the one to determine the "existence, validity and scope of the arbitration agreement" to constitute clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator, and affirming district court's dismissal of the action on that basis); *see also Schneider v. Kingdom of Thailand*, 688 F.3d 68, 72 (2d Cir.

2012) (finding "clear and unmistakable evidence of the parties' intent to delegate [the question of arbitrability] to the arbitrator," where arbitration provision expressly granted arbitration panel authority to decide issues relating to the "existence or validity" of the arbitration agreement) (internal quotations omitted).

Accordingly, the question of whether Plaintiff Wakeford's claims against Millennium are properly the subject of arbitration should itself be decided by an arbitrator, not this Court.  The Court should, therefore, stay the present action with respect to Plaintiff Wakeford's claims so that an arbitrator can decide whether his claims are rightfully subject to arbitration.  However, even if the Court were to find that it (rather than the arbitrator) should make that determination, the Court should still stay the current proceedings against Millennium because Plaintiff Wakeford's claims – together with the claims of the other four Plaintiffs – must be submitted to binding arbitration, for the reasons that follow.

## III.   ALL CLAIMS ASSERTED BY ALL PLAINTIFFS AGAINST MILLENNIUM ARE SUBJECT TO BINDING ARBITRATION.

All of the Plaintiffs' attempted claims against Millennium are subject to binding arbitration, because each Plaintiff entered into a valid agreement to arbitrate any disputes or claims they may have with Millennium.  As noted above, courts in the Second Circuit undertake a two-part test to determine whether the parties' instant dispute is subject to arbitration, "whereby they consider '(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement.'" *Marciano v. DCH Auto Group*, 14 F. Supp. 3d 322, 327 (S.D.N.Y. 2014) (quoting *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011)).  Because the answer to both of these questions in the instant case is undeniably "yes," this Court should enforce the arbitration provisions at issue.

**A.  The arbitration provision between Plaintiffs and Millennium is a valid part of the parties' contracts.**

First, a court must determine that the parties entered into a valid agreement to arbitrate. *Marciano v. DCH Auto Group*, 14 F. Supp. 3d 322, 327 (S.D.N.Y. 2014).  In so doing, a court looks to the applicable state law governing the formation of contracts generally.  *See First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (when deciding whether the parties agreed to arbitrate, court should "apply ordinary state-law principles that govern the formation of contracts"); *Cap Gemini Ernst & Young U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) ("in evaluating whether the parties have entered into a valid arbitration agreement [for purposes of the FAA], the court must look to state law principles"); *Marciano v. DCH Auto Group*, 14 F. Supp. 3d 322, 327 (S.D.N.Y. 2014) (whether the parties agreed to arbitrate is determined by looking at the operative state's "generally accepted principles of contract law").  Here, Illinois' contract law applies, as the Plaintiffs' Custodial Agreements contain an Illinois choice-of-law provision.  (*See* Moran Aff. at Ex. 6, Art. XX, Exs. 7-9, Art. XXI, and Ex. 14, Art. XXII.) That notwithstanding, the validity of the arbitration provision does not depend on the application of Illinois rather than New York law, as both states' laws are consistent on all relevant matters concerning contract formation.

The cardinal rule for contract interpretation, whether under Illinois or New York law, is to ascertain and give effect to the intention of the parties.  *Joyce v. DLA Piper Rudnick Gray Cary LLP*, 382 Ill. App. 3d 632, 636-37 (1st Dist. 2008); *Abiele Contracting, Inc. v. N.Y. City School Const. Auth.*, 91 N.Y.2d 1, 9 (1997).  Where a contract is unambiguous, the court will ascertain the parties' intent by looking to the plain language used in the contract itself, without introducing parol evidence. *Kirschenbaum v. Northwestern Univ.*, 312 Ill. App. 3d 1017, 1029 (1st Dist. 1999); *Edwards v. Poulmentis*, 307 A.D.2d 1051, 1052 (2d Dept. 2003).  Moreover, both Illinois and New

York law permit parties to a contract to incorporate by reference terms appearing in a separate document. *Wright v. Mr. Quick Inc.*, 109 Ill. 2d 236, 240 (1985) ("[i]t is well established that one instrument can incorporate the terms of another," where "[a]ll that is required is an expression of the parties' intent to incorporate those terms"); *Creative Waste Management, Inc. v. Capitol Environmental Services, Inc.*, 429 F. Supp. 2d 582, 561 (S.D.N.Y. 2006) ("a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it") (internal quotations omitted) (applying New York law).  When terms are incorporated into the parties' main contract, those terms are as much a part of the parties' contract as if they had been expressly set forth in the main contract. *Wilson v. Wilson*, 217 Ill. App. 3d 844, 853 (1st Dist. 1991); *Creative Waste Management, Inc. v. Capitol Environmental Services, Inc.*, 429 F. Supp. 2d 582, 561 (S.D.N.Y. 2006) (applying New York law); *see also Kirschenbaum v. Northwestern Univ.*, 312 Ill. App. 3d 1017, 1029 (1st Dist. 1999) ("[c]ontracts which specifically incorporate other documents by reference are to be construed as a whole with those other documents").

Each Plaintiff's Adoption Agreement incorporates the Custodial Agreement's terms, which includes the arbitration provision. (*See* Moran Aff. at ¶ 4; Reder Aff. at Exs. 1-5, p. 3.)  Indeed, each Plaintiff clearly agreed to be bound by the Custodial Agreement's terms when he/she executed his/her Adoption Agreement, which provides – just above each Plaintiff's signature – the following:

> I acknowledge that ***I have received a copy of the [Custodial Agreement]*** and the accompanying Disclosure Statement, ***and I understand and agree to be bound by the terms, and conditions in both***.

(Reder Aff. at Exs. 1-5, p. 3 (emphasis added).)  Somewhat redundantly, the Custodial Agreement in turn states that its terms are incorporated into the Adoption Agreement, defining itself as an

agreement between Millennium and any Millennium client "who executes an Adoption Agreement, ***incorporating the terms of this [Custodial] Agreement***, for the purpose of establishing an individual retirement account . . . ." (Moran Aff. at Exs. 6-9, 14 (emphasis added).) Because the Adoption Agreement clearly references the Custodial Agreement and unambiguously reflects the parties' intent to make it part of the parties' contract, each of the Custodial Agreement's terms – including the arbitration provision – are made part of Plaintiffs' contracts with Millennium. *See Wright v. Mr. Quick Inc.*, 109 Ill. 2d 236, 240 (1985) (incorporation by reference requires only that the main document express the parties' intention that the additional terms be incorporated); *Turner Constr. Co.*, 187 Ill. App. 3d 417, 420-21 (1st Dist. 1989) (recognizing that arbitration provisions are among the provisions appearing in separate documents that may be incorporated by reference into the parties' main contract); *see also Creative Waste Management, Inc. v. Capitol Environmental Services, Inc.*, 429 F. Supp. 2d 582, 561 (S.D.N.Y. 2006) (a separate document is incorporated by reference when it is sufficiently referred to and described in the main contract, such that the document "may be identified beyond all reasonable doubt" so as to make clear the parties "knew of and consented to the terms to be incorporated by reference") (internal quotations omitted) (applying New York law); *Liberty Manage. & Constr. Ltd. v. Fifth Ave. & Sixty-Sixth Street Corp.*, 208 A.D.2d 73, 77-78 (1st Dept. 1995) (finding arbitration provision appearing in general conditions section of a form contract to be incorporated by reference into parties' main contract).

That the Custodial Agreement is a valid part of the parties' contract cannot reasonably be disputed, for the additional reason that it was necessary for the very creation of Plaintiffs' Self-Directed IRAs. (*See generally*, Moran Aff. at Exs. 6-14.) Indeed, the Custodial Agreement contains the mandatory provisions required to qualify as a Self-Directed IRA under Section 408(a) of the

Revenue Code and, hence, to allow Plaintiffs to enjoy the tax benefits associated therewith.  It further allowed each Plaintiff to invest in a wider variety of assets than would be permitted with a non-directed account, and furthermore direct his/her own investments.  Thus, Millennium's Custodial Agreement has always reflected the provisions set forth in IRS Form 5305-A, which is the approved model custodial agreement, as well as certain additional provisions as permitted by the IRS and Form 5305-A, such as an arbitration provision.  Because Plaintiffs accepted the benefits of establishing an IRA held at Millennium through the Custodial Agreement for several years, they cannot now deny the effect of the arbitration provision contained therein.  *See, e.g.*, *Fyrnetics (H.K.) Ltd. v. Quantum Grp., Inc.*, No. 99 C 4704, 2003 WL 164220, at *4 (N.D. Ill. Jan. 14, 2003) ("'[a] party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause'") (quoting *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999)).

### B. All of the claims attempted against Millennium are within the arbitration provisions' broad scope.

Because the parties entered into a valid agreement to arbitrate, the Court must now determine whether the instant dispute falls within the arbitration provision's scope.  *See Marciano v. DCH Auto Group*, 14 F. Supp. 3d 322, 327 (S.D.N.Y. 2014).  Here, there can be no question that the answer, with respect to each claim asserted against Millennium, is "yes."

The liberal federal policy favoring arbitration requires courts to "construe arbitration clauses as broadly as possible" and to resolve any doubts about their scope in favor of arbitration. *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (quoting *Moses H. Cone*, 460 U.S. at 24-25).  In fact, a court *must* compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 19 (2d

Cir. 1995) (quoting *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991) (internal quotations omitted)).  This is particularly true with respect to broad arbitration provisions, such as the ones at issue here.  *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 250-51 (2d Cir. 1991) (stating the Second Circuit is "mindful of the Supreme Court's directive with respect to broad arbitration clauses," namely that "'[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail'") (quoting *AT&T Tech., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986)).

The arbitration provision that applies to Plaintiffs Bruce Behrens, Kathleen Behrens, Sherri Scheffert and David Scheffert broadly requires them to submit whatever "disputes" they may have with Millennium to binding arbitration.  Specifically, the arbitration provision states, in its entirety, as follows:

> Except as provided below, ***disputes between the parties to this Agreement shall first be submitted to private binding arbitration at the demand of either party***.  In any arbitration, each party shall appoint one person who is not in its employ or under contract with it to serve as arbitrator, and the two arbitrators shall name a third arbitrator. Except as otherwise agreed by the parties, the Arbitration Rules of the American Arbitration Association shall apply to the arbitration proceeding.  ***The parties agree that except below, no court action shall be taken by either party prior to arbitration***, and the majority decision of the arbitration panel shall be binding on both parties and in any subsequent action in court.
>
> Notwithstanding the above, the Custodian shall have the right to bring suit against Account Owner or the Custodial Account in a court of competent jurisdiction for the recovery of any sums owed Custodian under this agreement, including but not limited to, fees costs, expenses and sums paid by Custodian in error to or for the benefit of the Custodial Account.  In such event all court costs, legal expenses, reasonable compensation of time expended by the Custodian in the performance of its duties, and other appropriate and

> pertinent expenses and costs shall be collected by the Custodian
> from the Custodial Account.

(Moran Aff. at Exs. 7-9, Art. XVII (emphasis added); *see also id.* at Ex. 6, Art. XVI.) Notably, the arbitration provision does not exclude from coverage any type of grievance, subject matter, or legal theory Plaintiffs may advance as the basis for a dispute with Millennium; instead, the arbitration provision unambiguously and categorically mandates that any of Plaintiffs' "disputes" with Millennium be submitted to binding arbitration. *See Collins & Aikman Prods. Co. v. Building Systems, Inc.*, 58 F.3d 16, 21 (2d Cir. 1995) (such broad arbitration provisions give rise to a presumption that the claims are arbitrable); *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 250-51 (2d Cir. 1991) ("'[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail'") (quoting *AT&T Tech., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986)).  This, together with the wealth of case law directing courts to construe arbitration provisions "as broadly as possible" and to "resolve any doubts about their scope in favor of arbitration," clearly requires all of the claims these four Plaintiffs assert against Millennium be submitted to binding arbitration. *See Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (quoting *Moses H. Cone*, 460 U.S. at 24-25).

This same reasoning also requires a finding that all of Plaintiff Wakeford's claims against Millennium fall squarely with the arbitration provision applicable to him.  That arbitration provision provides, in relevant part, as follows:

> The Account Owner, his or her authorized representatives, or designated beneficiaries and Custodian must first attempt in good faith to resolve by negotiation any dispute arising out of or relating to this Agreement.  In the event that the Account Owner and Custodian are unable to resolve their dispute by negotiation, any controversy, claim, counterclaim, crossclaim, or other dispute arising out of or relating to this Agreement or ***the breach, termination, interpretation or validity thereof, including the***

> *determination of the scope or applicability or enforceability of this
> Agreement to arbitrate*, whether sounding in tort, contract or statute,
> *must be settled by individual, confidential, binding arbitration
> before a sole arbitrator* . . . .

(Moran Aff. at Ex. 14, Art. XVIII (emphasis added).)  Although this arbitration provision is not the same as that of the other four Plaintiffs, it is similar in the critical respect that it, too, broadly calls for the arbitration of any "dispute" relating to the Custodial Agreement or the parties' relationship.  This arbitration provision goes even further, however, and makes explicit that its coverage also includes "any controversy, claim, counterclaim, crossclaim, or other dispute . . . whether sounding in tort, contract or statute . . . ."  (Moran Aff. at Ex. 14, Article XVIII.) Accordingly, each of Plaintiff Wakeford's claims against Millennium – regardless of the legal theory advanced – falls squarely within the broad scope of the arbitration provision.

In light of the above, all Plaintiffs clearly entered into a valid agreement to arbitrate each of the claims they assert against Millennium in this lawsuit.  Accordingly, Millennium respectfully requests that this Court stay the instant proceedings against Millennium pending arbitration.  *See Katz v. Cellco Partnership*, 794 F.3d 341, 346-47 (2d Cir. 2015) (holding that the FAA requires that district courts referring all claims to arbitration stay, rather than dismiss, the proceedings).

## CONCLUSION

Plaintiffs have improperly brought this action against Millennium in this court because each named Plaintiff contractually agreed in writing, as consideration for the creation of the Self-Directed IRAs, that any and all disputes with Millennium arising from the Self-Directed IRAs must be resolved in binding arbitration in lieu of litigation. The broad arbitration provisions contained in the Self-Directed IRA Custodial Agreements cover any and all disputes, including all the counts alleged in the Complaint.  Therefore, Millennium respectfully moves this Court to order the proceedings herein stayed pending the agreed upon binding arbitrations.  In the alternative,

Millennium respectfully requests that the claims against Millennium be dismissed or that Millennium be granted a reasonable time in which to prepare and submit substantive motions in response to the Plaintiffs' purported claims.

Respectfully submitted,

By: */s/ Nicholas A. Caputo*
One of the *Attorneys for Millennium Trust Company, LLC*

Nicholas A. Caputo (admitted *pro hac vice*)
CAPUTO & POPOVIC, P.C.
739 S. Western Ave., Suite 1
Chicago, Illinois 60612
Tel.: (312) 300-3800
Fax: (888) 463-5405

Louis V. Fasulo
FASULO, BRAVERMAN & DI MAGGIO LLP
225 Broadway Suite 715
New York, New York 10007
Tel.: (212) 566-6213
Fax: (212) 566-8165