UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
BRUCE BEHRENS, KATHLEEN BEHRENS,
SHERRY SCHEFFERT AND DAVID SCHEFFERT,
RICHARD WAKEFORD on behalf of themselves and          Civil Action No.
All other similarly situated,                         16-CV -5508

                              Plaintiffs,
                 -against-

JPMORGAN CHASE BANK, N.A., U.S. BANK, N.A.,
CHICAGC MERCANTILE EXCHANGE, INC.
MILLENIUM TRUST COMPANY a/k/a MILLENIUM
TRUST CO. LLC, RUSSELL WASENDORF, RUSSELL
WASENDORF, JR. STEVEN BREWER a/k/a STEVEN
JOHN BREWER, GARLON MAXWELL, AMBER
MAXWELL, PERRY COMEAU, John Does #1-40.
Defendants.
-------------------------------------------------------------------------------X

## NOTICE OF MOTION
## BY PERRY COMEAU FOR RULE 11 SANCTIONS AGAINST PLAINTIFFS AND PLAINTIFFS' COUNSEL

PLEASE TAKE NOTICE that, upon the accompanying Motion, the undersigned Defendant will move this Court, the Honorable Vernon S. Broderick, on a date and time designated by the Court, at the United States Courthouse, 500 Pearl Street, New York, New York, for an order pursuant to Rule 11 of the Federal Rules of Civil Procedure graining Defendant Perry Comeau's motion for sanctions against Plaintiffs and Plaintiffs' counsel jointly and severally.

1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
BRUCE BEHRENS, KATHLEEN BEHRENS,
SHERRY SCHEFFERT AND DAVID SCHEFFERT,
RICHARD WAKEFORD on behalf of themselves and           Civil Action No.
All other similarly situated,                                            16-CV -5508

Plaintiffs,
-against-

JPMORGAN CHASE BANK, N.A., U.S. BANK, N.A.,
CHICAGC MERCANTILE E)(CHANGE, INC.
MILLENIUM TRUST COMPANY a/kla MILLENIUM
TRUST CO. LLC, RUSSELL WASENDORF, RUSSELL
WASENDORF, JR. STEVEN BREWER a/k/a STEVEN
JOHN BREWER, GARLON MAXWELL, AMBER
MA)(WELL, PERRY COMEAU, John Does #1-40.
Defendants.
-------------------------------------------------------------------------------X
MOTION
BY PERRY COMEAU FOR RULE 11 SANCTIONS AGAINST PLAINTIFFS AND
PLAINTIFFS' COUNSEL

Defendant, Perry Comeau, by and through his undersigned attorney, and,

pursuant to Rule 11, Fed. R. Civ. Proc., moves for an order of sanctions against

Plaintiffs and their counsel, stating as follows:

1.      The Plaintiffs have filed a Complaint, a First Amended Complaint, and

a Second Amended Complaint, all of which violate Rule 11(b)(1). The claims in each

version of the Complaint asserted against Defendant Perry Comeau relate to losses

Plaintiffs incurred in October 2008 as a result of the margin calls and subsequent

sellout of positions in their commodity futures trading accounts with Peregrine

Financial Group, Inc. ("PFG) and all such claims were fully litigated in the following

arbitrations before the National Futures Association ("NFA") panels of arbitrators.

1

a. <u>Bruce and Kathleen Behrens v. Peregrine Financial Group, Inc. and Brewer Financial Group, LLC</u>, NFA Arb. No. 09-ARB-99;

b. <u>Millennium Trust Co FBO/ K. Behrens v. Peregrine Financial Group, LLC and Brewer Financial Group, LLC</u>, NFA Arb. No. 09-ARB-135;[1]

c. <u>Millennium Trust Co FBO/ B. Behrens v. Peregrine Financial Group, LLC and Brewer Financial Group, LLC</u>, NFA Arb. No. 09-ARB-136;

d. <u>David and Sherri Scheffert. Millennium Trust /David Scheffert, and Millennium Trust/Sherri Scheffert v. Peregrine Financial Group, Inc. and Brewer Financial Group, LLC</u>, NFA Arb. Nos. 09-ARB-105, 09-ARB-142, 09-ARB-143; and

e. <u>Richard Wakeford v, Peregrine Financial Group, Inc. and Brewer Financial Group, LLC</u>, 09-ARB-100.

2.    The allegations concerning the October 2008 margin call and liquidation made in each version of the Complaint were the same allegations made by the Plaintiffs in the NFA arbitrations.

3.    In each of the NFA arbitrations, the Plaintiffs' claims were denied after a full evidentiary hearing.

4.    Plaintiffs have alleged that Perry Comeau was an agent of Peregrine Financial Group, Inc. ("PFG") at the relevant time and, as such, was in privity with PFG *vis-à-vis* the NFA arbitrations.

5.    Therefore, Plaintiffs' claims against Perry Comeau based on the October 2008 margin calls and subsequent liquidations are barred by the doctrine of *res judicata*. By pleading claims that the Plaintiffs know have been precluded by the doctrine of *res judicata*, Plaintiffs have violated Rule 11(b)(2),

---

[1] Millennium Trust Co. was the conduit for depositing Plaintiffs' IRA funds in the commodity accounts. *See* Cmplt. at ¶ 37.

R. Civ. Proc. since the claims are not warranted by existing law or any reasonable argument concerning the extension of existing law.

6.      Further, as alleged in the Second Amended Complaint, before transferring their accounts to PFG, the Plaintiffs had commodity trading accounts at Interactive Brokers, and then at Crossland, LLC.   For instance, the Behrens had over 10 years of commodity trading experience at the time that they opened their accounts at Brewer Futures Group, LLC, an independent broker, who introduced the accounts to PFG.

7.      Regarding the claims based on the embezzlement/Ponzi scheme perpetrated by Russell Wasendorf, Sr., those allegations violate Rule 11(b)(3), R. Civ. Proc. since the Plaintiffs' factual contentions related to those claims lack factual support, particularly the latest specious iteration of the Complaint, which asserts that the scheme involved shadow or phantom trading in their accounts in 2007 and 2008.   At the request of the CFTC, the Bankruptcy Trustee with the help of Price Waterhouse Cooper conducted an audit of all current customer accounts and ascertained that the customer accounts and the trading that occurred in the customer accounts were real and that Wasendorf Sr. did not have access to any specific customer account. Plaintiffs submitted claims in the PFG bankruptcy proceedings and the PWC audit was part of the record in that proceeding.   Therefore, Plaintiffs' current iteration of the basis for their cause of action against Mr. Comeau is nothing more than vexatious harassment.

### Failure to understand how Wasendorf Sr. accomplished the Ponzi scheme.

8.      In reality the scheme was a simple theft of funds maintained in the US Bank account known as the "1845 account."  Wasendorf Sr. would transfer funds from the 1845 account to one of his related non-regulated company accounts for his own use – this was the theft.  To cover up the theft, Wasendorf Sr made certain that only he received the actual 1845 account bank statement from US Bank.  Then he would counterfeit a bank statement for the 1845 account to give to his accounting staff and the regulators, reflecting a balance in the 1845 account which corresponded to the balance of what should have been in that account.

### The theft of funds from the 1845 Account had no impact on Plaintiffs.

9.      PFG maintained two customer segregated accounts.  One being the 1845 Account and the other being an account at JP Morgan Chase.  Customer money was held at PFG in one of the customer segregated accounts *or* on margin deposit with PFG's clearing brokers in accordance with industry standards.

**17 CFR § 1.20 Futures customer funds to be segregated and separately accounted for.**
**(a)** *General.* A futures commission merchant must separately account for all futures customer funds and segregate such funds as belonging to its futures customers. A futures commission merchant shall deposit futures customer funds under an account name that clearly identifies them as futures customer funds and shows that such funds are segregated as required by sections 4d(a) and 4d(b) of the Act and by this part. A futures commission merchant must at all times maintain in the separate account or accounts money, securities and property in an amount at least sufficient in the aggregate to cover its total obligations to all futures customers as computed under paragraph (i) of this section. The futures commission merchant must perform appropriate due diligence as required by § 1.11 on any and all locations of futures customer funds, as specified in paragraph (b) of this section, to ensure that the location in which the futures commission merchant has deposited such funds is a financially sound entity.

(b)*Location of futures customer funds.* A futures commission merchant may deposit futures customer funds, subject to the risk management policies and procedures of the futures commission merchant required by § 1.11, with the following depositories:

> (1) A bank or trust company;
> (2) A derivatives clearing organization; or
> (3) Another futures commission merchant.

10.    In the case of Plaintiffs, *all money* associated with Plaintiffs' accounts was transferred to PFG's clearing firm for margin deposit.  It was not in the 1845 Account, which is the only account from which funds were taken for the Ponzi scheme. Plaintiffs' losses in their accounts were realized in October 2008, thereafter, Plaintiffs closed their accounts.  Since Plaintiffs did not have any funds in the 1845 account after their accounts were closed and their trading losses paid for, they could never have been injured by theft from the 1845 account that was discovered in July 2012.

10.    Plaintiffs' trading loss did not stem from Wasendorf Sr.'s fraud, but from the Maxwells' actual trading of their accounts and the market conditions.  In October 2008, the Reuters/Jefferies Commodity Index plunged by 23% in October, its steepest monthly decline since 1956.  There is no evidence, nor any plausible basis to assume evidence will be discovered to show fictitious trades, shadow trades or other fraud underpinning Plaintiffs' losses.  In fact, the PWC audit in the bankruptcy proceeding demonstrated no such activity.

11.    Russell Wasendorf Sr.'s embezzlement/Ponzi scheme collapsed on July 9, 2012 following his attempted suicide attempt. Only those individuals and entities who had funds on deposit with or pledged to PFG at the close of business on July 9, 2012 were unable to obtain a return of all of their funds and property because of the scheme.

12.     Plaintiffs cannot establish a causal connection between Russell Wasendorf's embezzlement/Ponzi scheme and the losses they had suffered in 2008.

13.     Rather, the latest iteration of the Complaint asserts a completely implausible, specious and frivolous flight of fancy with allegations of shadow and phantom trades that have no basis in reality.

14.     Further, Plaintiffs' claims are barred by the statute of limitation (as well as res judicata) and there is no good faith basis for application of any equitable tolling doctrine.

15.     The Scheffert Plaintiffs became aware of this lack of casual relationship between Russell Wasendorf Sr.'s embezzlement/Ponzi scheme when their claim in In re Peregrine Financial Group, Inc., Case No. 12-27488, filed in the U.S. District court for the Northern District of Illinois, Eastern Division was denied by the bankruptcy trustee.

16.     All Plaintiffs became aware of this lack of casual relationship between Russell Wasendorf Sr.'s embezzlement/Ponzi scheme when they were informed that they were not members of the class certified in Peregrine Financial Group Customer Litigation, Case No. 12-cv-05546, filed in the U.S. District court for the Northern District of Illinois, Eastern Division was denied by the bankruptcy trustee.

17.     The statute of limitations has long run on any claims these Plaintiffs could possibly bring.

6

18.    All of these issues were brought to Plaintiffs' attention by counsel for Defendant Perry Comeau as early as September of 2016.  Yet Plaintiffs and Plaintiffs' counsel have failed and refused to dismiss or withdraw the claims, continuing to prosecute this frivolous suit, filing unauthorized amendments and causing Defendant Perry Comeau to incur over $25,000 in legal fees and costs to date.

WHEREFORE, Defendant Perry Comeau prays that this Court enter an order finding that the Plaintiffs and their counsel have violated the provisions of Rule 11(b)(2) and (3) and that an award of attorney's fees and costs be entered against the Plaintiffs and their counsel, jointly and severally.

Dated: April 6, 2017                          Respectfully submitted,

                                              GRIEISING LAW, LLC


                                              *s/ Julie Negovan*
                                              JULIE NEGOVAN, ESQUIRE
                                              195 Montague Street, 14th Floor
                                              Brooklyn, NY 11201
                                              (215) 431-9295
                                              jnegovan@griesinglaw.com
                                              *Attorneys for Defendant Perry Comeau*

7

Dated: Brooklyn, New York
      April 6, 2017              Respectfully submitted,

                             GRIEISING LAW, LLC


                             *s/ Julie Negovan*
                             JULIE NEGOVAN, ESQUIRE
                             195 Montague Street, 14th Floor
                             Brooklyn, NY 11201
                             (215) 431-9295
                             jnegovan@griesinglaw.com
                     *Attorneys for Defendant Perry Comeau*