UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRUCE BEHRENS, *et al.*

                Plaintiffs,

        vs.

JPMORGAN CHASE BANK, N.A., *et al.,*

           Defendants,

                                Index No. 1:16-cv-05508-VSB

                                Hon. Vernon S. Broderick


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF CROSS MOTION TO AMEND THE COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 15(a)(2) AND 15(c)(1)(B)**


September 28, 2018

Susan J. Levy
Attorney for Plaintiffs
40 East 10th Street
Suite 2k
New York, New York 10003
Tel. (212) 962-1782
Fax (212) 962-3711

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................................................ii

STATEMENT OF FACTS...............................................................................................1

Legal Malpractice Alleged Against Paul Thomas, Esq..................................................5

Breach of Fiduciary Duty and Fraudulent Misrepresentation.......................................5

ARGUMENT.................................................................................................................6

I.  UNDER FED.R.CIV.P. 15(a)(2) AND 15(c)(1)(B), PLAINTIFFS REQUEST
    PERMISSION TO AMEND THE SAC TO ADD FURTHER CLAIMS AGAINST
    PAUL THOMAS, ESQ...............................................................................................7

    A.  Because the Breach of Fiduciary Duty Claim and Fraud Claim Can Be
        Distinguished From the Legal Malpractice Claims, These Separate Claims
        Should Be Allowed..............................................................................................7

    B.  Because Paul Thomas, Esq. Breached His Fiduciary Obligations to the Plaintiffs
        By Also representing Perry Comeau, Whose Interests Were Opposed To the
        Plaintiffs, Which Proximately Caused Them To Lose Their NFA Arbitrations,
        This Pendant State Law Claim Is Proper...........................................................9

    C.  Plaintiffs Can Also State a Fraud Claim That is Distinct From the Legal
        Malpractice Claim.............................................................................................14

    D.  The Plaintiffs Can State a Claim for Aiding and Abetting Breach of
        Fiduciary Duty Against Paul Thomas, Esq. With Respect to PFG and
        Wasendorf, Jr. and Sn......................................................................................16

II. TO THE EXTENT THAT THE COMPLAINT DOES NOT PROPERLY ALLEGE
    THE FACTS TO SUPPORT THESE CLAIMS, PLAINTIFFS REQUEST LEAVE
    TO RE-PLEAD.........................................................................................................18

CONCLUSION.............................................................................................................18

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page**

*Berman v. Holland & Knight,*
    156 A.D.3d 429 (lst Dep't 2017)...............................................................8

*Caputo v. Pfizer, Inc.,*
    267 F.3d 181 (2d Cir. 2001).................................................................18

*Comeau v. PFG,*
    09 ARB-96 (NFA 2008)......................................... .................4,15

*Ferrara v. Jordache Enterprises, Inc.,*
    12 Misc. 3d 769 (S. Ct. Kings Co. 2006.....................................................9

*Johnson v. Proskauer,Rose LLP.*
    129 A.D.3d 59 (lst Dep't 2015).............................................................8

*Kaufman v. Cohen,*
    307 A.D.2d 113 (1st Dep't 2003).............................................................17

*Krupski v. Costa Crociere S.P.A.*
    530 U.S. 5381, 103 S. Ct. 2485 (2010).........................................................7

*Ocean Ships Inc. v. Stiles,*
    315 F. Supp. 3d 111(2d Cir. 2002)...........................................................10

*In Re Peregrine Fin. Group Cust.Liti.,*
    12-cv-5546 (N.D. Ill.2015) Docket #66.........................................................8

*Pierce Weiss, LLP. v. Subrogation Partners, LLC.,*
    701 F. Supp.2d 245 (E.D.N.Y.2010)...........................................................9

*Prout v. Vladeck,*
    316 F. Supp.3d 784 (S.D.N.Y. 2018), *reconsideration*
    *denied* 319 F. Supp.3d 741 (S.D.N.Y. 2018)...................................8,10,13,16

*Rupolo v. Fish,*
    87 A.D.3d 684 (2d Dep't 2011)...................................................8,10,13,14,16

*In re Sharp Intern. Corp.,*
    403 F.3d 43 (2d Cir. 2005).........................................................17

                                                                    **Page**

*Skadburg v. Gately,*
    911 N.W.2d 786 (S. Ct. Iowa, 2018)................................................................10

*Simcuski v. Saeli,*
    44 N.Y.2d 442 (1978)...........................................................................................8

*Tavarez v. Hill,*
    23 Misc. 3d 377 (S. Ct. Bronx Co. 2009)..........................................................9

**Statutes**

Commodites Exchange Act 7 U.S.C. §6....................................................................6, 10

Iowa Code 614.1(4)...............................................................................................10, 17

7 U.S.C.§ 6...................................................................................................................2

**Rules**

Federal Rules of Civil Procedure 8(d)(2).....................................................................8

Federal Rules of Civil Procedure 11...........................................................................12

Federal Rules of Civil Procedure 15(a)(2)....................................................................7

Federal Rules of Civil Procedure 15 (c )(1)(B) .....................................................7,8,10

17 C.F.R. 4.14(a)(10).........................................................................................7,11,12,15

New York Civil Practice Law and Rule §213(8)....................................................10,14

New York Rules of Professional Conduct §1.7, 1.8, 1.9................................................9

**Other Authorities**

NFA By-law 1101..........................................................................................11,12,15

47 SMU Law Review, p. 235 (1994)
"Fiduciary Duty, Tort and Contract: A Primer
of the Legal Malpractice Puzzle".................................................................................14

## STATEMENT OF FACTS

October, 2008 was a devastating month for Sherri Scheffert, David Scheffert, Bruce Behrens, Kathy Behrens, Richard Wakeford and many other Plaintiffs who were a group of Investors from the Hawkeye State that lies in the Heartland of America. Iowa is a State defined by its rural beauty, easy pace, and traditional values. However, these Seniors, from a small town called, Oelwein, lacked an advanced education, lacked business sophistication and instead had plain common sense which could be manipulated as was their strong sense of trust in their neighbors; thus they had no idea that they were about to become the victims of a massive ponzi-scheme being perpetrated by one of their own Iowan's, Russell Wasendorf, Sn. and many other non-Iowans, upon information and belief. As a result, it is alleged that these folks sustained a total loss of their life savings that were entrusted to brokers who told them that only 10% of their investments would be at risk at any one time. *See* SAC, ¶ 662.

By the end of October, 2008, their brokers Garlon Maxwell, Amber Maxwell and Perry Comeau, a neighbor, told the Plaintiffs that their accounts had experienced a total loss in value, and that the accounts would be closed. *See* SAC, ¶ 279  The evidence shows however, that accounts remained opened on paper in some cases until December, 2008 and February, 2009 because the accounts were being pilfered as part of the RICO Ponzi Scheme, and the "losses" in these account statements were being used to reflect stolen proceeds from the 1845 U.S. Bank Customer Segregated Account whereby phony margin calls were being issued on accounts with no trading positions and no cash in the account. *See* SAC ¶¶ 349, 701. These Margin Calls allowed Wasendorf, Sn. and others to debit customer monies from the U.S. Bank 1845 Account to make it look like these debits were legitimate and in response to a real Margin Call. *See*

-1-

Docket #209 Memorandum of law in Opposition to the Rule 11 Motion for Sanctions of Russell

Wasendorf, Jr. pp. 9-20. However, because the Margin Calls were allegedly not real and were

falsified, this tactic simply allowed PFG to pocket the client's monies or to pocket someone's

monies from the 1845 account, and at the same time to make the customer believe the accounts

were legitimate and simply failed due to natural market volatility, like the collapse of Lehman

Brothers which also occurred during that time frame. Because this Ponzi Scheme was time-

tested, it worked; and everyone went on with their lives. This scheme was so good, it lasted for

Twenty Years until it ended in July, 2012. *See* SAC, ¶¶ 545(b), 547.

 To cover up this Ponzi Scheme, Russell Wasendorf, Sn. and others had to find a

way to make sure the Ponzi Scheme remained a secret. Because the laws of the United States

including the Commodities Exchange Act, 7 U.S.C.§ 6, Et. Seq., protect investors from Fraud

and Thievery, and because the total losses in the Plaintiffs' Accounts were unexpected because

they had been fraudulently induced to believe that their nest eggs would be conservatively

invested, they were told by Perry Comeau, a neighbor to seek legal counsel. *See* SAC, ¶ 702.

 Perry Comeau was at one point an NFA Registrant and had been helping the

Plaintiffs manage their accounts. *See* SAC, ¶ 655. He had introduced them in the first instance

to Defendant Brokers from Utah, Garlon Maxwell and Amber Maxwell, husband and wife. Perry

Comeau had met them at a course he took in Utah taught by Garlon Maxwell called "Teach me

to Trade." *See* SAC ¶¶197-198. Perry Comeau, a nurse anesthetist, decided to moonlight as a

Commodities Trading Advisor as well as an Investor. *See* SAC, ¶197, Affidavit of Susan J.

Levy, Doc. 208, Exhibit 17, Sworn Statement of Perry Comeau. He along with the Oelwein

Class Members was also an investor and according to records Perry Comeau seemingly also lost

-2-

in these investments in the approximate amount of $401,979.07. *See* Paul Thomas' Letter dated

August 3, 2012 annexed to the SAC as Exhibit 15. The fact that Perry Comeau decided to

voluntarily give up this claim in the amount of $401,979.07 strongly suggests that this entire

amount was fictitious, because nobody acting reasonably would forego such a legitimate claim in

consideration of $10,000.00, but one would readily forego an illegitimate claim. *See* SAC, Exh.

18, Letter From Paul Thomas, Esq. dated April 6, 2011.

   At the time, the Investor Group believed that Perry Comeau had nothing to do

with the actual trading strategies and only Garlon Maxwell with the help of Amber Maxwell

made the investment decisions; *See* SAC, ¶278, and Perry Comeau just helped manage the

accounts, including their IRA accounts, and helped set up the accounts by filling out paper work

for the customers, promote the accounts, and answer customer questions. *See* SAC, ¶246.

   After the debacle, Perry Comeau told the group that they could recover their

losses in a legal action. He appeared to be altruistically concerned. Perry Comeau had more

knowledge than the Class, and he told the Class that he recommended attorney, Paul Thomas,

Esq. who represented strongly that he could recover their losses. At Perry Comeau's request,

Paul Thomas, Esq. came to Oelwein, Iowa in 2009 from California to meet and confer with the

Plaintiffs. *See* SAC, ¶222. Based on the recommendation of Perry Comeau, the Plaintiffs

decided to retain Paul Thomas, Esq. to recover their investment losses. *See* SAC, ¶650.

Retainers were signed on or about April 1, 2009. *See* SAC, Exh.19. Again, the Plaintiffs were

being further harmed, because Paul Thomas was conflicted and/or committed legal malpractice

which is an unintentional tort based on professional negligence. *See* SAC, ¶648-49, Exh. 17.

Motion to Disqualify Counsel.

Paul Thomas, Esq. had also represented Perry Comeau in a previous NFA

Arbitration commenced in 2008 that settled for $10,000.00 in 2009, entitled

*Comeau v. PFG*, 09-ARB-96. (NFA 2008). *See* SAC, Exh. 17, Mot. Disqualify. So with

respect to Perry Comeau, Paul Thomas, Esq. had already represented him in one unrelated matter

as well as the instant matter along with the rest of the Oelwein Class.

After the clients signed retainers on or about April 1, 2009, Mr. Thomas then filed

NFA claims in approximately April, 2009. *See* SAC Exh. 19. The NFA's fees for the Oelwein,

Class Customers appeared to be approximately $48,971.00. *See* SAC, ¶621. The Schefferts did

not have much money left, but were told by Attorney Thomas that they had a strong case and

should recover fully for their losses.  He told them on April 1, 2009 by letter that:

> "Pursuant to my conversations with Garlon Maxwell your losses are $310,000.00
> during the relevant period where Peregrine Financial Group violated exchange
> margin rules. As the case progresses if we find the loss to be higher we can make
> adjustments as needed.  The filing fee is $4,100.00.  I will not require any
> additional funds from you on this case.
> I am very confident we can prove serious margin violations by Peregrine Financial
> which should result in a very satisfactory resolution of the case in your favor.  In
> the near future I will hold a group conference call where everyone can dial in and
> we can conduct a 'live' strategy meeting.
> Should you have any questions do not hesitate to call my firm. . .  I look forward
> working [sic] with you to reverse these terrible account losses and restore and
> return a significant portion of your principal back to you."

*See* SAC, Exhibit 19.  See also Letter dated November 7, 2009, Exhibit 19.

After the case was filed with the first Statement of Claim, it was amended several

times. *See* SAC, ¶661.  Three other case were filed in Cook County Superior Court Illinois

relating to the claims raised in the NFA arbitrations.  A Motion for Declaratory Judgment was

filed in the Cook County Superior Court and then before the NFA seeking to extinguish the claim

-4-

sounding in PFG's violation of CME Rule 930C which prohibited trading in customer's account while a Margin Call was issued. *See* SAC, ¶642, 643, 673.  In a Preliminary Hearing, the NFA Arbitrators permitted this claim to proceed; however, Paul Thomas, Esq. dropped this meritorious claim in the "Third and Final Statement of Claim." *See* SAC, ¶668, Exhs. 14, 15, 20.

## Legal Malpractice Alleged Against Paul Thomas, Esq.

It turns out there were several important claims missing from the Statement of Claims relating to the actual trading strategies used.  Garlon Maxwell and Amber Maxwell were never sued although they made material misstatements to induce the customers to invest with them which constituted a Claim of Fraud.  Paul Thomas never presented evidence regarding the claim against PFG for failure to supervise the accounts which would have required PFG to stop the trading strategies that allowed for the use of out-of-the-money puts and calls that were bound to fail.  PFG was punished for this same behavior in a $700,000.00 fine imposed upon it by the NFA for failing to supervise other Brokers who employed nearly identical strategies. *See* NFA Order. *See* SAC, ¶665, Exh. 10.

Other acts of malpractice including failing to retain an expert to thoroughly review the Claimant's trading statements which would have shown the falsified nature of the statements which would have exposed the on-going Ponzi Scheme.

Although some of these claims were stated in the Statements of Claim, no evidence was adduced during the NFA Hearings to establish the claims alleged in the Statements of Claims, and the cases failed.

## Breach of Fiduciary Duty and Fraudulent Misrepresentation

During the pendency of the case, it was revealed that Paul Thomas, Esq. was

representing two conflicted parties, Perry Comeau and the rest of the Investor Class. Paul

Thomas, Esq. denied this conflict. *See* SAC, ¶649, Exh. 17. Even despite a motion to disqualify

Paul Thomas, Esq., Paul Thomas Esq. defended his position by telling the NFA Arbitrators in the

Scheffert proceeding that he had only represented Perry Comeau in an unrelated prior 2008 NFA

proceeding that had settled in 2009, and did not disclose to the Panel that he had also been

representing Perry Comeau in the instant proceeding as well. *See SAC,* Exhibit 17, Motion to

Disqualify Opposing Counsel, dated August 2, 2011.

Additionally, Paul Thomas did not disclose to the Panel that during this dual

representation, he had brokered a Settlement between Perry Comeau and the rest of the class by

having one of the members of the Class, Bill Allen pay Perry Comeau $10,000.00 in exchange

for Perry Comeau's promise to drop his claim in the approximate amount of $410,000.00.

*SAC,* Exhibit 18, Letter of Paul Thomas, Esq. dated April 6, 2011. In this letter, Paul Thomas

tells the Class that Perry Comeau is doing them a favor by voluntarily and altruistically

dismissing his case so that there will be more funds to go to the others. In reality, by removing

Perry Comeau from the case, Paul Thomas was better able to protect Perry Comeau whose

liability could and should have been established at the time of trial.

Perry Comeau's liability should have been raised as a claim and easily established

since he admitted in a sworn statement that he and the Maxwells each had more than 15

customers which would have required them to register as Commodity Trading Advisors which

only exempts one who has less than 15 customers. *See* Sworn Statement of Perry James Comeau

dated April 10, 2007, annexed to the Declaration of Susan J. Levy dated July 12, 2018, Doc.

#208, Exhibit 17, Page 48, line 10 to  P. 51, line 18; SAC ¶672. This damning evidence was left

-6-

out of the case by Paul Thomas, clearly favoring Perry Comeau and the Maxwells, and therefore

causing the Claimant's last claim to also fail that should have easily prevailed.  This claim

sounded in a violation of NFA By-Law 1101 which imposed strict liability on PFG for doing

business with non-registrants that were required to be registered.  By blocking the deposition

testimony of Perry Comeau on this very issue, the evidence was lacking to prove that Perry

Comeau and the Maxwells were required to be registered under 17 C.F.R. 4.14(a)(10) which

exempts from registration anyone who has less than 15 customers and who does not generally

hold themselves out to the public as trading advisors.  As such, Paul Thomas, Esq. ensured the

demise of the Plaintiffs' claims.

**ARGUMENT**

**I.  UNDER  FED. R. CIV. P. 15(a)(2) AND 15(c)(1)(B), PLAINTIFFS REQUEST
     PERMISSION TO AMEND THE SAC TO ADD FURTHER CLAIMS AGAINST
     PAUL THOMAS, ESQ.**

          Because the Federal Rules of Civil Procedure allow liberal amendments of

pleadings where justice so requires and because the claims sought to be added against Attorney

Paul Thomas, Esq. relate back to the facts already alleged in the Second Amended Complaint

filed on November 30, 2017, there will be no prejudice by amending these important claims that

should serve to once and for all vindicate the Plaintiffs' rights.  *See, Krupski v. Costa Crociere

S.P.A. ,*530 U.S. 5381, 5489, 103 S.Ct. 2485, 2488 (2010.)

     **A.  Because the Breach of Fiduciary Duty Claim and Fraud Claim Can Be
         Distinguished From The Legal Malpractice Claims, These Separate Claims
         Should Be Allowed.**

          Because Plaintiffs can establish three other claims that can be and should be

pleaded in the alternative to the legal malpractice claim, these claims are proper under Fed. R.

-7-

Civ. Pro.8(d)(2) which allows for alternative pleadings. These claims are also distinct from the

legal malpractice claim because these claims require scienter as opposed to the legal malpractice

claims which just require professional negligence. The damages are also different due to

trebling. Thus, the claims are not duplicative and should not be merged into one another under

the totality of the circumstances. *See, Simcuski v. Saeli,* 44 N.Y.2d 442 (1978), *Johnson v.*

*Proskauer, Rose LLP,* 129 A.D.3d 59 (1st Dep't 2015), *Berman v. Holland & Knight,* 156 A.D.3d

429 (1st Dep't 2017).

In fact, the New York Court of Appeals recognized independent claims that did

not merge into each other just like in this case. *See, Simcuski v. Saeli,* 44 N.Y.2d 442(1978)

Plaintiffs seek to add Three Pendant State Law claims against Paul Thomas, Esq.

for: (1) Breach of Fiduciary Duty, (2) Fraudulent Misrepresentation (3) Aiding and Abetting

Breach of Fiduciary Duty by PFG and Wasendorf, Jr. Because each claim relates back to the

facts already alleged in the prior SAC dated November 30, 2017, under the relation-back

provision of Federal Rules of Civil Procedure15(c)(1)(B), these amendments should be allowed

in the interests of justice.

In addition, although in certain cases, breach of fiduciary duty claims and fraud

claims merge into the legal malpractice claims; in this case, where the claims can be

distinguished, it would only be fair to allow these new claims that are separable. *Prout v.*

*Vladeck.* 316 F. Supp. 3d 784 (S.D.N.Y. 2018), *reconsideration denied,* 319 F. Supp. 3d 784

(S.D.N.Y. 2018); *accord, Rupolo v. Fish,* 87 A.D.3d 684, 685, 928 N.Y.S.2d 596, 598 (2d Dep't

2011), see also *In Re Peregrine Fin. Group. Cust. Liti.,* 12-cv-5546 Docket #66, Cons. Amended

Complaint (12/21/2012, ND. II.)(claims alleged *inter alia* for breach of contract, breach of

-8-

fiduciary duty, negligence, aiding and abetting breach of fiduciary duty.)

### B. Because Paul Thomas, Esq. Breached His Fiduciary Obligations to The Plaintiffs By Also Representing Perry Comeau, Whose Interests Were Opposed To the Plaintiffs, Which Proximately Caused Them To Lose Their NFA Arbitration, This Pendant State Law Claim Is Proper.

Because the allegations make clear that Paul Thomas, Esq's. dual representation of Plaintiffs as well as Perry Comeau another potential defendant in the NFA case presented a text-book example of a conflict of interest; Attorney Paul Thomas, Esq. breached his fiduciary obligations to Plaintiffs by favoring Perry Comeau over the interests of the Oelwein Class and this breach of fiduciary duty proximately caused damages by causing their claims against Perry Comeau and PFG to fail. *See* SAC, 648, 649, Exh. 17; *see Pierce Weiss, LLP. v. Subrogation Partners, LLC.,* 701 F. Supp. 2d 245 (E.D.N.Y 2010); *Tavarez v. Hill*, 23 Misc. 3d 377, 870 N.Y.S. 2d 744 (Sup. C. Bronx 2009); *Ferrara v. Jordache Enterprises, Inc.,* 12 Misc. 3d 769 (Sup. Ct. Kings. Co. 2006.) Under all state laws, an attorney cannot represent two clients whose interests are adverse or potentially adverse which is exactly what Mr. Thomas did in this case by representing Perry Comeau as well as the others. *See* New York Rules of Professional Conduct §1.7, 1.8, 1.9. He clearly sacrificed the Plaintiffs' claims to allow Perry Comeau to escape any and all liability in this case. Because legal malpractice applies a negligence standard, this fiduciary duty claim is more serious and does not sound in legal malpractice because with respect to Mr. Comeau, Paul Thomas, Esq. represented his client Perry Comeau very well. Paul Thomas, Esq. was able to help Perry Comeau navigate out of any civil or criminal liability for his participation in the representation of these other Oelwein Claimants. Because Legal Malpractice involves negligent conduct, there was no negligent conduct with respect to Mr. Thomas's

representation of Mr. Comeau, and Thomas did his job in protecting Comeau at the expense of the others. *See Ocean Ships Inc. v. Stiles,* 315 F. Supp.3d 111, 117 (2d Cir. 2002. ) However, because Thomas performed his duties toward Comeau at the expense of the other Plaintiffs and in effect necessarily had to sacrifice the other Oelwein claimants' claims to make sure Perry Comeau escaped responsibility, there should also be a proper claim for breach of fiduciary duty. *See  Prout v. Vladeck.* 316 F. Supp. 3d 784 (S.D.N.Y. 2018), *reconsideration denied,* 319 F. Supp. 3d 741 (S.D.N.Y. 2018); *accord, Rupolo v. Fish*, 87 A.D.3d 684, 685, 928 N.Y.S.2d 596, 598 (2d Dep't 2011), Because Mr. Thomas also had to necessarily prevaricate to protect his dominant loyalty to Perry Comeau, the Fraud claim should stand too.

Because the Breach of Fiduciary Duty claim is more akin to a common law fraud claim it is subject to Civil Practice Law and Rule §213(8) which would impose a Statute of Limitations of 6 years or 2 years from Discovery of the Fraud. A similar statute applies under Iowa too, making the claim timely under a 5 year Statute of Limitations plus tolling based on the Disclosure Rule. *See* Iowa Code 614.1(4)(based on unwritten contracts); *Skadburg v. Gately*, 911 N.W. 2d 786, 791 (Sup. Ct. Iowa, 2018.) Therefore, since Paul Thomas's representation of Plaintiffs ended at the earliest sometime in 2012, the claim is timely since the Second Amended Complaint was interposed in 2017, less than 6 years after the breach. Under the relation-back doctrine, Fed. R. Civ. P. 15(c)(1)(B), the accrual date on the Breach of Fiduciary Duty Claim would relate back to November 30, 2017 when the SAC was filed. This accrual date is as stated within six years of the earliest termination date of Paul Thomas representation of Plaintiffs sometime in 2012 or thereafter, and thus the Breach of Fiduciary Duty Claim is timely.

The Proposed Breach of Fiduciary Claim includes a claim that Paul Thomas,

-10-

purposefully failed to submit a claim on behalf of the Claimants against Perry Comeau for his

violations of the Anti-Fraud Provisions of the Commodities Exchange Act, 7 U.S.C. §6, Et. Seq.

due to Perry Comeau's allegedly fraudulent misrepresentations to the Plaintiffs about the safety

of the Investments. Alternatively, Paul Thomas also breached his fiduciary obligation toward the

other Claimants because he never offered into evidence the testimony of his other client Perry

Comeau which would have established PFG's liability to the Customer class based on a

violation of NFA By-law 1101, SAC ¶¶685, 686, 688.

NFA By-law 1101 states in relevant part that a Futures Commission Merchant, in

this case, PFG is strictly liable for damages:

> "No Member may carry an account, accept an order or handle a transaction in
> commodity futures contracts for or on behalf of any non-Member of the NFA, or
> suspended Member, that is required to be registered with the Commission as an
> FCM, IB, CPO, CTA or LTM, and that is acting in respect to the account, order or
> transaction for a customer, a commodity pool or participant therein, a client of a
> commodity trading advisor, or any person. . .":

*See* BYLAW 1101 annexed to the Declaration of Susan J. Levy, dated July 12, 2018 as Exh. 16,
Docket # 208

To establish a violation of NFA BYLAW 1101 required a consideration of

whether Perry Comeau, Garlon Maxwell and Amber Maxwell were required to be registered.

The CFTC allows an exemption from registration under 17 CFR 4.14(a)(10). Under 17 CFR

4.14(a)(10), if it could be established that the trading advisor did not hold himself out to the

public as an investment professional **and** he had less than 15 customers, than he or she was

exempted from registration; and therefore, BYLAW 1101 would be equally inapplicable.

To make sure that his client Perry Comeau escaped liability under NFA BYLAW

1101, Paul Thomas did not offer into evidence the damning testimony of Perry Comeau who

admitted in a sworn deposition that he and the Maxwells exceeded their 15 person exemption

under 17 CFR 4.14(a)(10) which would have required registration and which would have made

PFG liable under BYLAW 1101 for their for accepting their Orders. *See* Memorandum of Law in

Opposition to the Rule 11 Motion for Sanctions, Doc. # 207. Therefore, this claim failed not

because Paul Thomas was negligent, and he certainly was not negligent which is the basis for a

legal malpractice claim; but because he intentionally wanted to protect the rights of Perry

Comeau because Paul Thomas favored his client Perry Comeau at the expense of the other

plaintiff.[1]

---

[1] The clear evidence was Perry Comeau's admission at a sworn deposition that he began
to sign up customers on his own ledger because Garlon and Amber Maxwell's accounts already
had 15 customers and they all wanted to fall under the exception to avoid the necessity of
registering with the NFA, at page 48 line 10:

> "Q: So at what point did clients start signing up under you?
> A: I would say October, November of last year.
> Q: How did that come about?
> A: I would have to look at the records, though, ma'am. I'm not exact on that.
> Q.: And how did that come about, that prior to that date people were going
>     directly to Garlon, but then on that date they started signing up under you?
>     So what caused that change?
> A: Well, what caused that change was basically their ledgers were full. They
>     couldn't handle any more than 15 clients. That was the rule. That was the
>     CFTC rule.
> Q: Well, prior to that you didn't have any clients under your name?
> A: Correct.
> Q: How did it come about that you started taking clients in?
> A: Because the Clients wanted us to trade their account?
> Q: Let me finish my question
> A: Sorry
> Q: Did you even know it was an option, or did you know it was an option that you
>     could have clients under you?
> A: Yes, I knew that I could have my own 15 clients
> Q: And did you know that at the time that Rick Garseau came to you?
> A: Gosh, I can't say I was definitely clear at that point. It's hard for me to
> remember what I knew and what I didn't know at that time. I was still taking
> the courses at that time, so I can't actually say that that was something I knew.

Because the Breach of Fiduciary Duty Claim is distinct from the other acts of

legal malpractice and proximately caused the damages complained of and a trebling of damages

as distinguished from the legal malpractice claim, this claim should stand. *Prout v. Vladeck.* 316

F. Supp. 3d 784 (S.D.N.Y. 2018), *reconsideration denied*, 319 F. Supp. 3d 784 (S.D.N.Y. 2018);

*accord, Rupolo v. Fish*, 87 A.D.3d 684, 685, 928 N.Y.S.2d 596, 598 (2d Dep't 2011.)  Because

---

Q: Was there an event that happened that made you say, 'I'm going to start
   signing up clients myself'
A: Well, John Seaburg. I had clients that wanted to sign up, and we were then the
   Intention of getting our licenses, and it would take time to get these licenses
   and everything. We had six months to study for the exam and do all of that
   type of work, and in the meantime we had clients that wanted us to trade for
   them, so I just took them as my clients.  Is that what you wanted to know?
Q: Yes. What licenses were you getting ready to obtain.
A: Well, the CTA from the NFA and the AP from the NFA.
Q: Did you approach Garlon at some point and say, ' I want to start taking on
   clients myself?
A: No. I mean, it was just that we had more clients than what they could handle in
   their accounts.
Q: So did Garlon come to you then
A: No. Garlon didn't come to me.  It was just that we knew you could have 15
   accounts under your name, and their ledgers were full. They had 15 accounts.
   So we wanted to help these people and mange their accounts and so–
Q: Who is 'we'
A: What do you mean 'we'
Q: You just said we wanted to continue to help these clients.  So, I'm just curious
   who we is?
A: Well, it's myself basically.  I mean they came to me, the clients did.  Maybe
   the preposition 'we' should not have been used.
Q: I'm just trying to get a better understanding of the sequence of events, and
   what triggered the fact that you started putting clients under your name.  You
   say that it was not a suggestion of Garlon?
A. I just knew that his ledger was full, like I've explained.  Her ledger was full,
   Amber. They were actively trading those accounts.  We had more people who
   wanted to have an account, so I knew that I could also have 15, so then at that
   point I started putting them under my advisory account.

*See* Sworn Statement of Perry James Comeau dated April 10, 2007, annexed to the Declaration
of Susan J. Levy dated July 12, 2018, Doc. #208, Exhibit 17, Page 48, line 10 to  P. 51, line 18.

the conduct appears to be intentional and purposeful, rather than negligent, the breach of

fiduciary duty claim as stated is more akin to the fraud claim and therefore is entitled to the

application of the Six Year Statute of Limitations plus tolling under C.P.L.R. §213(8). *See*

Anderson, Roy Ryden, **Fiduciary duty, Tort and Contract: A Primer of the Legal**

**Malpractice Puzzle,** 47 SMU Law Review, p. 235 (1994.)

### C. Plaintiffs Can Also State a Common Law Fraud Claim That Is Distinct From the Legal Malpractice Claim With Respect to Paul Thomas Representation of Perry Comeau.

Because Paul Thomas, Esq. also engaged in Fraudulent Misrepresentation by

making material misstatements and material omissions with respect to his representation of Perry

Comeau, Plaintiffs can establish the elements of a Common Law Fraud Claim as well, since the

Fraud claim is distinct from the Legal Malpractice Claim.

To plead a claim for Fraud under New York State law, it has to be sufficiently

distinct from the Legal Malpractice claim, as it is in this case. *See Rupolo v. Fish,* 87 A.D.3d

684 (2d Dep't 2011.) Regarding the claims for legal malpractice, those theories revolve around

the failure to bring certain claims, to adduce certain evidence or to hire a competent expert to

show the trading was a sham and the statements were falsified that would have led to the

unmasking of the Ponzi Scheme.

First, in response to PFG's Motion to Disqualify Thomas at the Scheffert's NFA

Hearing, Paul Thomas stated on the record that he had not represented Perry Comeau in the

instant Plaintiffs' NFA case, when he actually had represented him and settled the case on behalf

of Perry Comeau. *See SAC,* Exh. 17, Motion to Disqualify Paul Thomas, Esq. based on Conflict

of Interests; Exh. 18, Letter of Paul Thomas, Esq. dated April 6, 2011. Paul Thomas

-14-

misrepresented that he had only represented Comeau in an unrelated 2008 NFA claim that settled in 2009 which is not legal malpractice but a fraudulent misrepresentation used to hide the nature of his breach of fiduciary duty to the Claimants. *See*, Affidavit of Sherri Scheffert sworn to on July 3, 2018, Exhibit 17, Transcript of NFA Proceedings, Docket #213 filed on July 13, 2018, *See Comeau v. PFG*, 09-ARB-96. (NFA 2008). By misrepresenting the true posture of his representation, the Claimants did not have a reassonable opportunity to change lawyers, and instead they proceeded to lose their NFA Claim. Because Paul Thomas was favoring his client Perry Comeau, the Oelwein Class was bound to lose. In fact, the probative evidence against Perry Comeau and others consisting of the testimony that each advisor had more than 15 customers should have been introduced to establish strict liability against PFG under NFA BYLAW 1101. However, conflicted Thomas never even brought this material evidence to the attention of the NFA arbitrators.

In addition, in the letter of Perry Comeau dated April 6, 2011 annexed to the SAC as Exhibit 18, Paul Thomas continues to fraudulently state that he was settling Perry Comeau's case to help the rest of the Claimants, another material misrepresentation where Thomas had to drop Comeau from the case to protect Comeau from exposure to liability or exposure of PFG to liability.

Thomas also failed to admit evidence to show that Perry Comeau who had admitted to having more than 15 customers was not exempt from registration under 17 CFR 4.14(a)(10) and NFA By-law 1101. Thus, these fraudulent statements and the fraudulent omission proximately caused the case to lose as well, and intentionally so, because had the deposition testimony of Perry Comeau been admitted, then PFG would have been vicariously

-15-

liable under NFA By-Law 1101. Again, the Fraudulent conduct is purposeful and therefore distinguishable from the legal malpractice claims which sound in negligence primarily. *Prout v. Vladeck.* 316 F. Supp. 3d 784 (S.D.N.Y. 2018), *reconsideration denied*, 319 F. Supp. 3d 784 (S.D.N.Y. 2018); *accord, Rupolo v. Fish*, 87 A.D.3d 684, 685, 928 N.Y.S.2d 596, 598 (2d Dep't 2011.)

So too in New York, there must be a showing that the Fraudulent Conduct was distinct from the conduct amounting to Fraudulent Concealment to toll the Statute of Limitations, as it is in this case. This requirement is also satisfied because the acts of Fraudulent Concealment occurred following the end of the Arbitrations in 2012; whereas the acts of Fraudulent misrepresentation and Fraudulent Omission that form the basis of the new claims occurred from 2009 through 2011 and prior to the end of the Client's arbitrations. *See* Aff. Sherri Scheffert, sworn to on July 3, 2018, Exhibit 13, NFA Hearing, Declaration of Susan J. Levy dated July 12, 2018, Doc. #208, Exhibit 17, Page 48, line 10 to P. 51, line 18 ; SAC Exh.18--Letter of Paul Thomas, April 6, 2011.

Therefore, based on this distinctiveness the Fraudulent Misrepresentation Claim is also proper and substantially different from the legal malpractice claim. This Fraud Claim is also subject to the Six Year Statue of Limitations in New York and or the Five year Iowa Statute that also allows tolling based on the Discovery Rule.

Because the clients did not discover this Fraud until at least 2017, under tolling these claims are timely as well.

**D. The Plaintiffs Can State a Claim for Aiding and Abetting Breach of Fiduciary Duty Against Paul Thomas, Esq. With Respect to PFG and Wasendorf, Jr. and Sn.**

Because Paul Thomas, Esq. gave material assistance to PFG in helping PFG defraud the customers and prevent them from recovering damages for PFG's illicit use and theft of customer monies, Paul Thomas aided and abetted PFG who owed a Fiduciary duty to Plaintiffs.

To state a claim for aiding and abetting breach of fiduciary duty, a claimant must establish that the defendant knowingly gave material assistance to the primary violator proximately causing damages. *See, In Re Sharp Intern. Corp.,* 403 F.3d 43, 49-50 (2d Cir. 2005); *Kaufman v. Cohen,* 307 A.D.2d 113 (1st Dep't, 2003.) Here, the claim for aiding and abetting PFG's breach of its fiduciary relationship requires intentional conduct based on Paul Thomas, Esq.'s purposeful assistance that he gave to PFG and the Wasendorfs' in dropping the claim in the Third and Final Amended Complaint purposefully helping to dispose of Plaintiffs' claims in such a manner as to favor PFG. As such, this claim can and should be pleaded in addition to or in the alternative to the Legal Malpractice Claim which just describes unintentional misfeasance against Paul Thomas, Esq. for his failure to interpose the correct claims and make the winning arguments. Because this claim is also governed by either C.P.L.R. 213(8) or Iowa Code 614.1(4) plus tolling based on the discovery rule, this claim is timely.

Because PFG and the Wasendorfs as the Future Commission Merchants for the Claimants owed Plaintiffs an independent Fiduciary Duty separate and apart from the Fiduciary Duty owed to them by Paul Thomas, Esq., Mr. Thomas's material assistance to PFG to purposefully lose the NFA arbitrations is a viable claim and distinct. For example, Paul Thomas, Esq. by voluntarily dropping the claim against PFG for violating its own margin rules, Paul Thomas released PFG from liability for this breach, and PFG did not have to even contest the

-17-

proper claim which was voluntarily removed from the case in the "Third and final Statement of Claim." Dec. Susan Levy, dated 7/12/2013, Exhibit 6, Claimants Statements of Claim. Thus, the conduct taken by Paul Thomas certainly gave material assistance to PFG, Wasendorf, Jr. and Wasendorf Sn. Thus, Paul Thomas should be held liable for aiding and abetting.

## II. TO THE EXTENT THAT THE COMPLAINT DOES NOT PROPERLY ALLEGE THE FACTS TO SUPPORT THESE CLAIMS, PLAINTIFFS REQUEST LEAVE TO RE-PLEAD.

To the Extent that this Court finds the pleadings deficient under Rule 9 or any other rule, Plaintiffs respectfully request leave to re-plead. *See Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191-193 (2d Cir. 2001.)

### CONCLUSION

Based on the Foregoing, Plaintiffs Cross-Motion to Amend the Complaint to add Claims XXXVI, XXXVII, and XXXVIII against Defendant Paul Thomas, Esq.'s should be granted in full and for all further and other relief that this Honorable Court deems just and proper.

September 28, 2018

Respectfully Submitted,

＿＿＿/S/Susan Leyv＿＿＿
Susan J. Levy, Esq.
Attorneys for Class Plaintiffs
    and Class Members
40 East 10th Street
Suite 2K
New York, New York 10003
Tel: (212) 962-1782
Fax: (212) 962-3711