**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| BRUCE BEHRENS, *et al.*, | ) | |
| | ) | |
| | ) | No. 1:16-cv-05508-VSB |
| Plaintiffs, | ) | |
| | ) | District Judge Vernon Broderick |
| v. | ) | |
| | ) | |
| JPMORGAN CHASE BANK, N.A., *et. al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**
**BY DEFENDANT NATIONAL FUTURES ASSOCIATION**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ....................................................................................................................4

I.     Plaintiffs' Claims Are Time-Barred....................................................................................4

    A.     The Statute of Limitations on Plaintiffs' Claims Has Expired. ...........................5

    B.     The Fraudulent Concealment Doctrine Does Not Apply......................................5

II.    Plaintiffs Have Not Stated a Claim for Relief Against NFA. ..........................................11

    A.     Plaintiffs Have Not Stated a Claim Under 7 U.S.C. § 25(b). .............................11

        i.     Plaintiffs have not stated a § 25(b) claim with respect to NFA's alleged failure to uncover PFG's fraud....................................................11

        ii.    Plaintiffs have not stated a § 25(b) claim with respect to any other allegation...................................................................................................17

    B.     Plaintiffs' Remaining Claims Should Be Dismissed. ..........................................19

CONCLUSION....................................................................................................................22

i

# TABLE OF AUTHORITIES

**CASES**                                                                               **Page(s)**

*Am. Agri. Movement, Inc. v. Bd. of Trade*,
    977 F.2d 1147 (7th Cir. 1992) ...........................................................................20

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974)............................................................................................11

*Armstrong v. McAlpin*,
    699 F.2d 79 (2d Cir. 1983)...............................................................................6, 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................4, 14

*Austern v. Chi. Bd. Options Exch.*,
    898 F.2d 882 (2d Cir. 1990)...............................................................................17

*Barbara v. N.Y. Stock Exch., Inc.*,
    99 F.3d 49 (2d Cir. 1996) ...................................................................................20

*Brawer v. Options Clearing Corp.*,
    807 F.2d 297 (2d Cir. 1986)..........................................................................14, 15

*CNA Int'l v. Baer*,
    981 N.E.2d 441 (Ill. App. Ct. 2012) ..................................................................21

*D'Alessio v. N.Y. Stock Exch., Inc.*,
    258 F.3d 93 (2d Cir. 2001).....................................................................................3

*DGM Investments v. N.Y. Futures Exch.*,
    No. 01 CIV. 11602 (RWS), 2002 WL 31356362 (S.D.N.Y. Oct. 17, 2002) .........................20

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010).................................................................................1

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 513 (2012) ..........................................................................................21

*Grossman v. Citrus Assocs. of the N.Y. Cotton Exch., Inc.*,
    706 F. Supp. 221 (S.D.N.Y. 1989), *aff'd*, 927 F.2d 594 (2d Cir. 1991) ...................19

*Hegy v. Cmty. Counseling Ctr. of Fox Valley*,
    158 F. Supp. 892 (N.D. Ill. 2001) ......................................................................21

*Hodges v. Glenholme School*,
    713 F. App'x 49 (2d Cir. 2017) ...................................................................................6

*Howell v. N.Y. Post Co.*,
    81 N.Y.2d 115 (1993) ...............................................................................................21

*In re Parmalat Secs. Litig.*,
    412 F. Supp. 2d 392 (S.D.N.Y. 2006)..........................................................................5

*In re Peregrine Fin. Grp.*,
    No. 12-27488, Dkt. 764 (N.D. Ill. Bankr. Apr. 18, 2013) ........................................18

*In re Peregrine Financial Group Customer Litigation*,
    No. 12-cv-5546 ...........................................................................................................11

*Kelber v. Forest Elec. Corp.*,
    799 F. Supp. 326 (S.D.N.Y. 1992)...............................................................................5

*Klein & Co. Futures, Inc. v. Bd. of Trade*,
    464 F.3d 255 (2d Cir. 2006)........................................................................................19

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012).....................................................................................6, 8

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)........................................................................................14

*Levy v. BASF Metals Ltd.*,
    No. 1:15-cv-7317, 2017 WL 2533501 (S.D.N.Y. June 9, 2017) .................................6

*Martin v. Dickson*,
    100 F. App'x 14 (2d Cir. 2004) ....................................................................................5

*Nicholas v. Saul Stone & Co. LLC*,
    224 F.3d 179 (3d Cir. 2000).........................................................................................3

*Ryder Energy Dist. Corp. v. Merrill Lynch Commodities Inc.*,
    748 F.2d 774 (2d Cir. 1984)..................................................................................14, 15

*Sam Wong & Son, Inc. v. N.Y. Mercantile Exch.*,
    735 F.2d 653 (2d Cir. 1984)..................................................................................14, 15

*Shak v. JPMorgan Chase & Co.*,
    156 F. Supp. 3d 462 (S.D.N.Y. 2016)..........................................................................5

*Singh v. Wells*,
    445 F. App'x 373 (2d Cir. 2011) ..................................................................................8

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  637 F.3d 112 (2d Cir. 2011)......................................................................................21

*Troyer v. Nat'l Futures Ass'n*,
  No. 1:16-cv-00146-SLC, 2017 WL 2971962 (N.D. Ind. July 12, 2017)..................................20

*W. Capital Design, LLC v. N.Y. Mercantile Exch.*,
  180 F. Supp. 2d 439 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002)..............15, 16, 20

*Watson v. United States*,
  865 F.3d 123 (2d Cir. 2017)........................................................................................6

### STATUTES

7 U.S.C. § 21 ....................................................................................................5, 12, 13, 17

7 U.S.C. § 25 ......................................................................................................... *passim*

### OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ..............................................................................................6, 8, 14

Fed. R. Civ. P. 12(b)(6)................................................................................................4

NFA Bylaw 301(a)(ii)..........................................................................................13, 17

Report of Investigation, Berkeley Research Group, LLC, Analysis of the National
  Futures Association's Audits of Peregrine Financial Group, Inc. ("Berkeley
  Report"), https://www.nfa.futures.org/news/BRG/report_of_investigation.pdf..............1, 9, 10

Statement Relating to the Commission's Authority to Impose Civil Money
  Penalties and Futures Self-Regulatory Organizations' Authority to Impose
  Sanctions; Penalty Guidelines, ¶ 26,265 (Nov. 1, 1994) ......................................................17

## INTRODUCTION

Like many others, Plaintiffs allegedly lost their life savings following the market crash of 2008.  In 2009, they initiated arbitrations against Peregrine Financial Group, Inc. ("PFG"), their futures commission merchant, as well as Brewer Financial Group, LLC, who allegedly introduced them to PFG.  The arbitrations were conducted pursuant to the Code of Arbitration of the National Futures Association ("NFA"), which has been designated by the Commodity Futures Trading Commission ("CFTC") as a registered futures association and is the industrywide, self-regulatory organization ("SRO") for the U.S. derivatives industry.  Plaintiffs lost those arbitrations in 2011 and did not seek judicial review.

In July 2012, as a result of the efforts of NFA auditors, PFG was going to be exposed as the perpetrator of a massive fraud, which prompted PFG's CEO, Russell Wasendorf, to attempt suicide.  *See* Report of Investigation, Berkeley Research Group, LLC, Analysis of the National Futures Association's Audits of Peregrine Financial Group, Inc. ("Berkeley Report"), at 40 (Jan. 29, 2013), https://www.nfa.futures.org/news/BRG/report_of_investigation.pdf.[1]  NFA immediately initiated a Member Responsibility Action against PFG, prohibiting PFG from, among other things, accepting or soliciting customer funds, placing trades for customer accounts, and distributing or transferring funds without NFA approval.  *Id.* at 6 & n.5.  PFG declared bankruptcy the next day.  *Id.*; Compl.[2] ¶ 714.  Plaintiffs consulted with an attorney, who advised them that they could protect their interests by filing Notices of Claim in the bankruptcy case.  *Id.*

---

[1] As described below, *infra* at 9-10, the Berkeley Report serves as a basis for Plaintiffs' allegations of fraudulent concealment.  As such, NFA is entitled to refer to that document. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("Where a document is not incorporated by reference, the court may [nevertheless] consider it" at the motion to dismiss stage "where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint" (quotation marks omitted)).

[2] "Compl." refers to the Second Amended Complaint.

Plaintiffs apparently believed themselves to be potential beneficiaries of a class action that was filed in 2012. *Id.* ¶¶ 718-19. However, Plaintiffs were not in the plaintiff class and did not benefit from the 2015 class settlement. *Id.* ¶ 724.

In 2016—eight years after their loss—Plaintiffs sued PFG, Wasendorf, and other individuals and entities. A year later, Plaintiffs amended their complaint to cast an even wider net, suing, among others, NFA. Plaintiffs' complaint lodges two primary accusations against NFA: first, that NFA conducted the 2011 arbitrations in an unfair and even "biased" manner, and second, that NFA should be liable for having failed to uncover PFG's fraud earlier than 2012.

Plaintiffs' complaint should be dismissed on the pleadings. First, as several other motions to dismiss have already explained, Plaintiffs' complaint is untimely. Plaintiffs invoke the doctrine of "fraudulent concealment," but its arguments in favor of applying that doctrine are virtually unintelligible.

Further, Plaintiffs have not stated a claim on the merits. Federal law does not require NFA to indemnify the victims of fraud committed by industry participants, as Plaintiffs apparently believe. To the extent Plaintiffs seek to hold NFA responsible for its conduct during Plaintiffs' unsuccessful arbitration, Plaintiffs' complaint is barred by the doctrine of arbitral immunity. Although Plaintiffs are understandably frustrated by their failure to recover their losses, the solution is not to file hopeless lawsuits against SROs like NFA. The complaint against NFA should be dismissed with prejudice.

## BACKGROUND

Because this Court already has six other motions to dismiss pending before it that discuss many of the relevant allegations, NFA offers only a brief recitation of the allegations and related facts of which this Court can take judicial notice.

NFA is a registered futures association that operates as an SRO under the Commodity Exchange Act ("CEA"). Compl. ¶¶ 548, 553, 578. SROs "perform[] regulatory functions that would otherwise be performed by" an agency like the CFTC or Securities and Exchange Commission. *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001). Among its responsibilities, NFA "performs screening to determine fitness to become and remain a member of the NFA, establishes and enforces certain rules and standards, audits and investigates members, and conducts arbitration in futures disputes." *Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 181 n.6 (3d Cir. 2000).

Plaintiffs were introduced to PFG by Steven Brewer, who owned and operated Brewer Futures Group ("BFG"). Compl. ¶ 179. Plaintiffs then traded commodity futures through PFG. *Id.* ¶ 66. Following the infamous 2008 market crash, Plaintiffs' "account values were wiped out" as of October 8, 2008. *Id.* ¶ 279.

In June 2009, Plaintiffs initiated a series of arbitrations at NFA against PFG and BFG. *Id.* ¶ 709. In 2011, NFA arbitrators ruled against Plaintiffs. *Id.* ¶¶ 562, 712; *see* Wasendorf MTD (Dkt. 124) at 24-25.

NFA has repeatedly disciplined BFG and Brewer. In 2004, NFA fined BFG and Brewer $30,000 for misconduct. Compl. ¶ 188. In 2007, NFA fined BFG $45,000 for additional misconduct. *Id.* ¶¶ 187, 188. In 2010, the NFA suspended BFG and Steven Brewer from membership. *Id.* ¶¶ 189, 557-58.[3]

---

[3] Although Plaintiff alleges that NFA "expelled" BFG and Steven Brewer, *id.* ¶¶ 189, 557-58, BFG and Brewer were in fact suspended, as indicated by the Notice of Suspension that Plaintiffs cite, *id.* ¶ 189. BFG's registration was later withdrawn because it failed to file a new guarantee agreement required under NFA rules, and Brewer's registration and membership were withdrawn at the same time.

In 2012, PFG CEO Russell Wasendorf, Sr. attempted suicide, and left a suicide note admitting that he had "been pocketing customer moneys in segregated accounts." *Id.* ¶ 699. PFG then declared bankruptcy and was exposed as a Ponzi scheme. *Id.* ¶ 225.

After consulting with counsel, Plaintiffs filed notices of claim in the bankruptcy pleading, apparently on the belief that they would be the beneficiaries of a class action filed shortly after PFG declared bankruptcy. *Id.* ¶ 715. But this belief was incorrect: Plaintiffs were not included within the definition of the plaintiff class, which encompassed only those plaintiffs who had cash deposits with PFG in 2012. *Id.* ¶¶ 724-28; *see* U.S. Bank MTD (Dkt. 112) at 4-5; JPMorgan MTD (Dkt. 115) at 7-8.

Plaintiffs did not file this suit until 2016, and did not add NFA as a defendant until they amended their complaint on November 30, 2017—five years after PFG's bankruptcy and nine years after they suffered their losses.

## ARGUMENT

Plaintiffs' claims should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Plaintiffs' complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). On the face of the complaint, it is clear that Plaintiffs' claims are time-barred. Further, even if they were not time-barred, Plaintiffs' claims plainly fail on their merits as a matter of law.

## I.     Plaintiffs' Claims Are Time-Barred.

The statute of limitations for all of Plaintiffs' claims has expired long ago, and the fraudulent concealment doctrine cannot rescue Plaintiffs' claims.

### A.    The Statute of Limitations on Plaintiffs' Claims Has Expired.

The limitations period on all of Plaintiffs' claims has long expired—and, aside from their efforts to invoke tolling doctrines, plaintiffs do not contend otherwise.  Plaintiffs assert four claims against NFA.  Two of those claims, Counts XVI and XXXIV, are for violations of the CEA, 7 U.S.C. § 1 *et seq.*  Those claims are subject to a two-year limitations period.  7 U.S.C. § 25(c).  Because Plaintiffs sustained their losses in 2008 and lost their arbitrations in 2011, Plaintiffs' claims against NFA—filed in 2017—are time-barred.

Plaintiffs also assert claims for "Unjust Enrichment and restitution under Federal and State Law" (Count XXII) and "Intentional Infliction of Emotional Distress and Consequential Damages" (Count XXIII).  The statute of limitations for these claims is three years and one year, respectively.  *See Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 478 (S.D.N.Y. 2016); *Kelber v. Forest Elec. Corp.*, 799 F. Supp. 326, 340–41 (S.D.N.Y. 1992).  These claims accrued no later than when PFG's fraud was exposed in 2012.  Thus, Plaintiffs' suit comes too late.[4]

### B.    The Fraudulent Concealment Doctrine Does Not Apply.

Plaintiffs contend that their suit is timely based on the doctrine of fraudulent concealment.  Compl. ¶¶ 698-730.  Tolling based on fraudulent concealment requires that "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the

---

[4] Plaintiffs include "Principal-Agent Liability" (Claim I) and "Punitive Damages" (Claim XXIV) as separate claims for relief against all defendants, including NFA.  But neither vicarious liability, nor punitive damages, is a cause of action.  Rather, vicarious liability is a mechanism to recover damages under a separately-pleaded cause of action, while punitive damages is a type of remedy.  *See In re Parmalat Sec. Litig.*, 412 F. Supp. 392, 405 (S.D.N.Y. 2006) ("Vicarious liability is a theory of liability . . . not a separate cause of action."); *Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004) ("[T]here is no separate cause of action in New York for punitive damages.").  Thus, if Plaintiffs' other claims fail, its requests for "vicarious liability" and "punitive damages" also fail.

limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012).  Plaintiffs must plead fraudulent concealment with particularity.  *Hodges v. Glenholme Sch.*, 713 F. App'x 49, 51 (2d Cir. 2017) ("The elements of fraudulent concealment must be pled with particularity under Rule 9(b)." (citing *Armstrong v. McAlpin*, 699 F.2d 79, 88-89 (2d Cir. 1983))); *see Levy v. BASF Metals Ltd.*, No. 1:15-cv-7317, 2017 WL 2533501, at *8 (S.D.N.Y. June 9, 2017) (rejecting equitable tolling and granting motion to dismiss where plaintiff failed to plead her "claim of fraudulent concealment . . . with particularity, in accordance with the heightened pleading standards of Rule 9(b)").  Plaintiffs have failed to allege with particularity fraudulent concealment with respect to any of their claims against NFA.[5]

     *Section 25(b) claim (Count XXXIV)*.  Count XXXIV is a claim under Section 22(b) of the CEA, 7 U.S.C. § 25(b), which provides a private cause of action against a "registered futures association that fails to enforce any bylaw or rule that is required under section 21 of this title or in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation, or order."  The doctrine of fraudulent concealment does not apply to that count.

     Plaintiffs argue they are entitled to fraudulent concealment in light of "the NFA's role in protecting the Status Quo where in fact not one claimant who ever appeared before the NFA with a cliam [sic] in excess of $100,000.00 ever prevailed in an NFA arbiration [sic] against

---

[5] Plaintiffs sometimes refer to their tolling theory as "Equitable Tolling based on Fraudulent Concealment."  *E.g.*, Compl. ¶ 708.  To the extent they invoke the doctrine of "equitable tolling" as distinct from the doctrine of "fraudulent concealment," that contention plainly lacks merit.  To obtain equitable tolling, a plaintiff must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017).  As noted in the text, Plaintiffs have not shown diligence.  Moreover, there are no "extraordinary circumstances."  Plaintiffs offer the conclusory allegation that they have "limited resources and limited education," but this is insufficient to establish equitable tolling.  *See id.* at 132-33.

Wasendorf or PFG during the 17 years that NFA reported such statistics."  Compl. ¶ 698.

Plaintiffs appear to be saying that the failure of any claimant to prevail against PFG in an NFA

arbitration on a claim seeking in excess of $100,000 prior to 2012 demonstrates that NFA was

fraudulently concealing PFG's wrongful conduct.

This allegation does not establish fraudulent concealment for several reasons.  First, with

respect to many of Plaintiffs' theories, Plaintiffs take issue with publicly reported NFA

enforcement actions.  Those publicly reported actions could not possibly have concealed

anything.  For instance, Plaintiffs allege that NFA found that certain entities had violated NFA's

rules in 1996, 2000, 2004, and 2007, but criticize the actions taken by NFA, claiming it was

legally required to expel them (as opposed to levy fines), and that NFA's failure to expel those

entities violated the CEA.  *Id.* ¶ 545(b), (c); *see id.* ¶¶ 552-61.  Plaintiffs also allege that NFA

was legally obligated to deny registration to defendant Perry Comeau and his company, based on

a 2007 cease and desist order issued by the Iowa Department of Insurance.  *Id.* ¶¶ 258(c), 545(e).

These allegations are based on public facts—*i.e.*, the disciplinary hearings and the cease and

desist order—so the facts underlying them could not possibly have been concealed.

Likewise, Plaintiffs allege that NFA committed various procedural improprieties in

administering their unsuccessful arbitrations, and complain that the filing fees were too high.  *Id.*

¶¶ 545(f)-(g), 616-58.  For instance, Plaintiffs complain that NFA acted illegally by conducting

the hearing in Illinois rather than Iowa, *id.* ¶¶ 625-27.  But NFA could not have concealed these

facts, given that Plaintiffs knew where they were arbitrating and how much they were paying.

Plaintiffs do not even try to show that any facts relating to these theories were concealed,

fraudulently or otherwise.

Even with respect to Plaintiffs' claim that NFA violated the CEA by failing to discover Wasendorf's fraud, *id.* ¶¶ 545(a), (b), (d), the fraudulent concealment doctrine does not apply for three reasons.  First, Wasendorf's fraud was exposed in 2012, and Plaintiffs admit that as of 2012, they could have filed their claims.  *Id.* ¶ 716 (p. 145) (Plaintiffs "could not reasonably have discovered the facts constituting defendants' violations until after the law enforcement and regulatory investigations began on July 9, 2012.  *Until then*, Plaintiffs . . . did not understand the nature of the total conduct giving rise to [their] claims" (emphasis added)).  Yet Plaintiffs did not file this suit against NFA until 2017.  Plaintiffs do not adequately allege any wrongful concealment of material facts between 2012 and 2017, or their due diligence in investigating claims.  Thus, they cannot show fraudulent concealment.  *Koch*, 699 F.3d at 157 (four-year delay precluded invocation of fraudulent concealment doctrine).

Second, even for the pre-2012 time period, Plaintiffs do not allege with particularity any facts establishing fraudulent concealment; they simply allege that because Wasendorf and PFG prevailed in prior arbitrations, NFA *must* have been hiding unspecified information.  That is not enough to assert a theory of fraudulent concealment, even at the motion to dismiss stage.  *See Armstrong*, 699 F.2d at 90 (allegations that "each communication to shareholders . . . actively concealed the facts by failing to disclose them to the shareholders" did "not satisfy the specificity requirements of Rule 9(b)"); *Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir. 2011) (upholding dismissal of complaint when complaint "allege[d] no specific facts indicating that defendants prevented them from exercising their rights during the limitations period").

Third, Plaintiffs' allegation is illogical.  Plaintiffs include a section in their complaint entitled "PFG's Record of Regulatory Violations," which catalogs several enforcement actions by NFA against PFG.  Compl. ¶¶ 431-38.  These facts are completely inconsistent with

Plaintiffs' conclusory assertion that NFA systematically favored PFG in arbitrations in an effort to cover up fraud. What is more, it was *NFA* whose actions led to the exposure of Wasendorf's fraud, and *NFA*'s publication of its Member Responsibility Action against PFG and Wasendorf, followed by the Berkeley Report, further exposed the facts underlying that fraud. *Supra* at 1. NFA did not *conceal* a fraud by *exposing* it.

Plaintiffs make two other efforts to establish fraudulent concealment, both of which lack merit. First, Plaintiffs rely on the Berkeley Report—which NFA commissioned in order to conduct an independent review of NFA audit procedures and ensure that adequate procedures are in place. Berkeley Report, *supra*, at 1. According to Plaintiffs, "NFA retained the Berkeley Research Group . . . for purposes of 'self-evaluation' with respect to its 20 year lapse in recognizing the Wasendorf Sn. Fraud." Compl. ¶ 570. Plaintiffs assert, without elaboration, that the Berkeley Report "appears in many ways self-serving," but nonetheless state that it "did fault NFA auditors for disregarding red flags" and "acknowledges that it would not have been rocket science to understand that there was Fraud going on." *Id.* ¶¶ 570, 572. Plaintiffs state: "As such, the NFA auditors failed to take note of these red flags to investigate Fraud." *Id.* ¶ 573. Plaintiffs also assert that the "[Berkeley] Report indicated that [former PFG official] Susan O'Meara intimidated the NFA," but that "NFA certainly was not intimidated when it fined PFG including Susan O'Meara $700,000 for misconduct in February, 2012." *Id.* ¶¶ 575-76. Based on these allegations, Plaintiffs allege that the Berkeley Report "itself constitutes fraudulent concealment of the facts of this matter." *Id.* ¶¶ 577, 704.

These allegations cannot support a fraudulent concealment claim. Plaintiffs offer no coherent argument about how the Berkeley Report "itself constitutes concealment." To the contrary, Plaintiffs allege that the Berkeley Report, which NFA posted on its own website in

January 2013, *disclosed* allegedly damning information, such as the fact that "NFA auditors . . .

disregard[ed] red flags." *Id.* ¶ 570. Disclosing information is the *opposite* of concealing

information. Plaintiffs' vague allegation that the Berkeley Report "appears in many ways self-

serving," *id.*, does not come close to alleging, with particularity, facts showing fraudulent

concealment. What is more, the Berkeley Report was issued in January 2013, *see* Berkeley

Report, *supra*, title page, and Plaintiffs identify no acts of concealment between the issuance of

that report and the filing of Plaintiffs' complaint.

Plaintiffs' final theory of fraudulent concealment is as follows: because NFA is a "self-

regulartory [sic] agenc[y], these facts concealing these claims are by self-concealing." Compl.

¶ 706. This statement is unintelligible. To the extent Plaintiffs claim that the fraudulent

concealment claim invariably applies with respect to all claims against NFA, Plaintiffs'

argument lacks any legal support.

**Counts XVI, XXII, and XXIII.** Nor can Plaintiffs show fraudulent concealment with

respect to any other claim asserted against NFA. In Count XVI, Plaintiffs allege that NFA aided

and abetted other entities' violations of the CEA by "failing to shut down PFG and Brewer prior

to 2007 and by allowing Perry Comeau to become registered as a [sic] associated person along

with his company Black Ink Trading." *Id.* ¶ 816(g). Plaintiffs also assert boilerplate allegations

of "Unjust Enrichment and restitution under Federal and State Law" (Count XXII) and

"Intentional Infliction of Emotional Distress and Consequential Damages" (Count XXIII) against

all defendants, including NFA.

Plaintiffs do not explain how any of the elements of these claims were concealed by

NFA, fraudulently or otherwise. To the extent Plaintiffs rely on their arguments concerning

NFA's purported cover-up of Wasendorf's fraud, those arguments fail for the reasons stated above.

Because Plaintiffs' claims are untimely, and Plaintiffs have offered no coherent theory for fraudulent concealment, the Court should dismiss Plaintiffs' claims against NFA.[6]

## II.   Plaintiffs Have Not Stated a Claim for Relief Against NFA.

Even if Plaintiffs' claims were timely, they would still fail on the merits.  The Complaint should be dismissed with respect to NFA because Plaintiffs have not stated any claims for relief.

### A.   Plaintiffs Have Not Stated a Claim Under 7 U.S.C. § 25(b).

In Count XXXIV of the complaint, Plaintiffs assert a claim against NFA under Section 22(b)(2) of the CEA, 7 U.S.C. § 25(b).  To state a claim under that statute, Plaintiffs must demonstrate (1) that NFA "fail[ed] to enforce any bylaw or rule that is required under section 21 of this title or in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation, or order"; (2) "that such failure . . . caused the loss," and (3) that NFA "acted in bad faith in failing to take action." 7 U.S.C. § 25(b)(2), (4).  Count XXXIV should be dismissed for the independent reason that Plaintiffs do not adequately allege any of those elements.

i.   Plaintiffs have not stated a § 25(b) claim with respect to NFA's alleged failure to uncover PFG's fraud.

Plaintiffs spill substantial ink alleging how NFA failed to uncover PFG's Ponzi scheme. Compl. ¶¶ 554-615.  Those allegations are insufficient to establish a § 25(b) claim.

---

[6] To the extent Plaintiffs assert tolling against NFA under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), such a claim would fail.  Plaintiffs rely on the class action in *In re Peregrine Financial Group Customer Litigation*, No. 12-cv-5546, and apparently take the position that the statute of limitations was tolled until June 18, 2015, when a Plan of Allocation was filed.  Compl. ¶ 730 (p. 148).  But NFA was not even a defendant in the class action culminating in that Plan of Allocation.  Plaintiffs do not and cannot assert any good-faith claim that *American Pipe* tolling applies to NFA.

***Failure to allege "bylaw or rule that is required under section 21 of this title."***  First, Plaintiffs have not adequately alleged that NFA "fail[ed] to enforce any bylaw or rule that is required under section 21 of this title or in enforcing any such bylaw or rule" and thus "violat[ed] this chapter or any Commission rule, regulation, or order."  7 U.S.C. § 25(b)(2).  Plaintiffs' theory appears to be as follows:  PFG and Wasendorf "violated just and equitable principles of trade or had Orders outstanding against them . . . prior to 2008."  Compl. ¶ 555.  This establishes that PFG and Wasendorf violated NFA bylaws "that mandated that all industry professionals abide by just and equitable principals [sic] of trade."  *Id.* ¶ 557.  Under 7 U.S.C. § 21(b)(3), NFA was duty-bound to punish those violations by expelling PFG and Wasendorf.  *Id.* ¶ 554.  By failing to expel PFG and Wasendorf until 2012, NFA "fail[ed] to enforce any bylaw or rule that is required under section 21 of this title," thus exposing NFA to a private cause of action.  7 U.S.C. § 25(b)(2); *see* Compl. ¶ 557.

This argument is premised on a misreading of 7 U.S.C. § 21(b)(3).  Under that statute, NFA's rules must require that "no person shall be admitted to or continued in membership . . . if such person" "(A) has been and is suspended or expelled from a registered futures association"; "(B) is subject to an order of the Commission denying, suspending, or revoking his registration"; "(C) . . . by his conduct while associated with a member, was a cause of any suspension, expulsion, or order . . . which is in effect with respect to such member"; or "(D) has associated with him any person who is known, or in the exercise of reasonable care should be known, to him to be a person who would be ineligible for admission to or continuance in membership under clause (A), (B), or (C) of this paragraph."  In other words, this statute requires NFA's rules to state that *if* a person is subject to (or associates with someone subject to) a suspension, expulsion, or revocation order by the CFTC or a futures association, *then* NFA is barred from having that

person as a member.  Plaintiffs do not plead that any of the predicates in NFA Bylaw 301(a)(ii), which incorporates the requirements of § 21(b)(3)(A)-(D), were satisfied prior to 2012; they do not plead that any entity was *already* subject to a suspension, expulsion, or revocation order by the CFTC before 2012.  Thus, NFA Bylaw 301(a)(ii) imposed no legal duty on NFA to expel or suspend Wasendorf prior to 2012.  Plaintiffs' claim that NFA should have uncovered the fraud and expelled or suspended Wasendorf prior to 2012 does not satisfy the criteria of NFA Bylaw 301(a)(ii).

Under Plaintiffs' alternative interpretation, *any time* NFA uncovers a fraud, it may be required to cover investors' losses during the time period when the fraud was occurring but had not yet been discovered.  Plaintiffs' theory would be that NFA is under a legal duty to expose and expel wrongdoers; and for whatever period of time a fraud proceeds prior to discovery, NFA is liable for "fail[ing] to enforce any bylaw or rule that is required under section 21 of this title." 7 U.S.C. § 25(b)(2).  This extraordinary theory would not only expose NFA to liability in every single fraud case involving a regulated entity, but also create an incentive for NFA *not* to uncover fraud—because the very act of uncovering the fraud would require NFA to indemnify investors for the period prior to the fraud's discovery.  No court has ever accepted this theory, and for good reason: it has no textual support and would create an absurd result that undermines the fundamental structure of regulation by SROs.

Plaintiffs identify no other "bylaw or rule that is required under section 21 of this title" that NFA "fail[ed] to enforce."  7 U.S.C. § 25(b)(2).  Nor do Plaintiffs allege how NFA "in

enforcing any such bylaw or rule violate[d] this chapter or any Commission rule, regulation, or order." *Id.* Therefore, Plaintiffs have not stated a § 25(b) claim.[7]

**Failure to allege bad faith.**[8]  Additionally, Plaintiffs have not pleaded bad faith, as required by 7 U.S.C. § 25(b)(4).

The requirement of pleading bad faith reflects Congress' recognition that self-regulatory organizations such as NFA "must be able to police the markets effectively with the broad discretion accorded by Congress." *Sam Wong & Son, Inc. v. N.Y. Mercantile Exch.*, 735 F.2d 653, 677 (2d Cir. 1984).  Congress determined that "after-the-fact litigation would be a 'most imperfect device' with which to evaluate [self-regulatory organization] decisions" and thus imposed the bad-faith requirement to bar courts from "substitut[ing] [their] judgment for that of the experts." *Brawer v. Options Clearing Corp.*, 807 F.2d 297, 302 (2d Cir. 1986).

To plead bad faith, Plaintiffs must show "first, that the [registered entity] acted or failed to act with knowledge; and second, that the [registered entity's] action or inaction was the result of an ulterior motive." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 780 (2d Cir. 1984).[9]  In view of the importance of the bad-faith requirement to Congress'

---

[7] Plaintiffs do not allege any claim under 7 U.S.C. § 25(b) that is *not* predicated on a violation of NFA rules, nor would such a claim have merit.  By its terms, the cause of action in 7 U.S.C. § 25 applies only in connection with the enforcement of rules adopted under 7 U.S.C. § 21(b).  *See* 7 U.S.C. § 25(b)(2).

[8] Plaintiffs also cannot establish that NFA's alleged failure to enforce its bylaws caused their loss, as required by 7 U.S.C. § 25(b)(4).  The fraud that NFA allegedly failed to uncover—that Wasendorf was embezzling investors' money—is different from the conduct that led to Plaintiffs' losses—that PFG engaged in risky trades, causing investors' money to be lost to the beneficiaries of those trades.  That said, Plaintiffs' causation theories are so opaque and unintelligible that NFA relies primarily on other, more straightforward grounds for dismissal.

[9] Although the Second Circuit has not squarely resolved whether bad faith under 7 U.S.C. § 25(b) must be alleged with particularity under Fed. R. Civ. P. 9(b), it has held that state-law "[c]laims of commercial bad faith, like claims of fraud, are governed by the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006).  If state-law "bad faith" claims are subject to Rule 9(b), there is no basis

self-regulatory model, these requirements form a "special pleading rule" that is "strictly applied." *W. Capital Design, LLC v. N.Y. Mercantile Exch.*, 180 F. Supp. 2d 438, 441-42 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002).

As to the first element, Plaintiffs have not plausibly alleged that NFA had "knowledge" of the fraud before 2012. Plaintiffs' assertion that NFA's imposition of a fine in 2012 necessarily shows that "the NFA was aware of the egregious misconduct that befell Plaintiffs" *before* PFG's fraud was exposed, Compl. ¶ 567, is rank speculation. Even read generously, nothing in the complaint plausibly alleges anything more than NFA's purported "negligent inattention," which is insufficient to establish bad faith under § 25(b). *W. Capital Design*, 180 F. Supp. 2d at 442.

Even if Plaintiffs adequately alleged knowledge, the complaint should still be dismissed because Plaintiffs have not pleaded the second element of bad faith: an "ulterior motive." To state a § 25(b) claim, a complaint must allege that "self-interest or other ulterior motive unrelated to proper regulatory concerns . . . constitute[s] the sole or the dominant reason for the . . . action." *Sam Wong*, 735 F.2d at 677. Failure adequately to allege an ulterior motive warrants dismissal on the pleadings. *Ryder*, 748 F.2d at 780 (affirming dismissal of complaint which did not allege "ulterior motive").

For instance in *Brawer*, the plaintiffs pleaded that a self-regulatory organization did not take a regulatory action because leaving the status quo intact would "generate increased trading volumes and revenues." 807 F.2d at 303. The Second Circuit held that such allegations were insufficient to plead bad faith, explaining that "if such a degree of self-interest were allowed to

---

for excluding federal-law "bad faith" claims from Rule 9(b)'s coverage. In any event, Plaintiffs' complaint is inadequate regardless of whether the Court applies Rule 9(b) or the standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

demonstrate bad faith, then . . . board members would inevitably be subject to bad-faith charges, and the concept of . . . self-regulation would be undermined." *Id.* (quotation marks and alterations omitted).  Likewise, in *Western Capital*, the plaintiff sued the New York Mercantile Exchange under 7 U.S.C. § 25(b), alleging that it failed to enforce its rules prohibiting outside trading.  In an effort to plead bad faith, the complaint included the allegation that the Exchange's officers were motivated by bad faith because they "do not wish to enforce prohibitions that would limit their ability to conduct outside trades."  180 F. Supp. 2d at 442.  The District Court dismissed the complaint, holding that the plaintiff's allegation regarding the officers' improper motives were "pure speculation, insufficient to satisfy the rule of pleading bad faith by specific facts."  *Id.* (citing *Ryder*).  The Second Circuit affirmed.  It held that allegations of bad faith merely "parrot[ing] the law without providing any supporting factual allegations" could not withstand a motion to dismiss, and the plaintiff's allegation that the officers "failed to act because of self interest" was "speculat[ive]" and hence "inadequate."  *W. Capital Design*, 25 F. App'x at 65.  Finding that "nowhere does plaintiff allege that an ulterior motive is the sole or dominant reason for NYMEX's inaction," the court upheld the dismissal of the suit.  *Id.*

　　　　Plaintiffs' complaint should be dismissed for the same reason.  Nothing in the complaint establishes the sort of "ulterior motive" that could withstand a motion to dismiss.  Plaintiffs assert in conclusory fashion that "NFA acted in bad faith by allowing these violations to continue," Compl. ¶ 547, but this is the precise sort of conclusory allegation that cannot withstand a motion to dismiss.  The sole allegation in the complaint even resembling an "ulterior motive" is the allegation that when NFA levies fines, those fines "support their salaries and other compensation."  Compl. ¶ 712.  Yet that allegation does not show a motive for NFA's alleged *failure* to enforce its rules—if anything, this allegation would establish a motive to over-enforce

rules, not to under-enforce rules.  Further, the speculation that NFA issues fines in order to pad its wallets could be made in *any* case—and is the exact sort of speculative allegation that the Second Circuit deemed insufficient in *Brawer*.  Plaintiffs therefore have not adequately pleaded the requisite "bad faith" to withstand a motion to dismiss.

     ii. <u>Plaintiffs have not stated a § 25(b) claim with respect to any other allegation.</u>

  Plaintiffs' remaining theories under § 25(b) are similarly meritless.  Plaintiffs allege that NFA violated the CEA by fining, as opposed to expelling, Brewer, BFG, and other entities.  Compl. ¶ 555.  In Plaintiffs' view, NFA was legally *required* to expel these entities upon a showing of wrongdoing; indeed, Plaintiffs allege that NFA lacks statutory authority to issue fines.  *Id.* ¶ 561.  As previously explained, however, Plaintiffs simply misread the relevant law, which does not impose an all-or-nothing requirement that members be expelled for even the most trivial violation.  *Supra* at 12-13; *see also* CFTC Policy Statement Relating to the Commission's Authority to Impose Civil Money Penalties and Futures Self-Regulatory Organizations' Authority to Impose Sanctions; Penalty Guidelines, ¶ 26,265 (Nov. 1, 1994).  Rather, under 7 U.S.C. § 21(b)(3), NFA's rules must contain a provision requiring NFA to deny membership to an entity *if* that entity has been suspended or expelled by the Commission.  *Supra* at 12-13.  Plaintiffs do not allege that NFA violated NFA Bylaw 301(a)(ii)(C), which embodies that statutory requirement.  At a minimum, Plaintiffs do not allege that NFA *knew* it was breaking the law and did so for an ulterior motive, as required to make a showing of bad faith.  *Supra* at 15-16.

  Plaintiffs also argue at great length that NFA was "highly biased" in connection with its arbitrations.  Compl. ¶¶ 616-58.  These allegations are plainly foreclosed by the doctrine of arbitral immunity.  *Austern v. Chi. Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990)

("The CBOE, as the commercial sponsoring organization, is . . . entitled to immunity for all functions that are integrally related to the arbitral process . . . .  Reducing the CBOE's immunity based on the arbitral deficiencies present here would merely serve to discourage its sponsorship of future arbitrations—a policy that is strongly encouraged by the Federal Arbitration Act.").  If Plaintiffs were dissatisfied with the outcome of the arbitrations, they should have sought vacatur of the arbitration awards in the manner prescribed by the Federal Arbitration Act, not sued the arbitrators six years after the arbitration awards were entered.  Moreover, Plaintiffs do not allege that NFA "fail[ed] to enforce any bylaw or rule that is required under section 21 of this title or in enforcing any such bylaw or rule" and thus "violat[ed] this chapter or any Commission rule, regulation, or order," 7 U.S.C. § 25(b)(2); the allegations simply consist of a laundry list of frustrations regarding NFA.  Compl. ¶ 619.  Additionally, Plaintiffs also do not even attempt to allege the requisite ulterior motive to satisfy the CEA's "bad faith" requirement.  *Supra* at 15-16.

Plaintiffs also lodge scattered additional allegations against NFA.  For instance, they complain about NFA's "exorbitant Filing Fees," Compl. ¶ 619(a), and they assert that the "$700,000 fine" levied against PFG "should have been returned to investors such as Plaintiffs." *Id.* ¶ 565.  These allegations fail to state a claim.[10]  Plaintiffs have not tied these allegations, or any other accusations in the complaint, to the statutory requirement that NFA "fail[ed] to enforce any bylaw or rule that is required under section 21 of this title or in enforcing any such bylaw or rule" and thus "violat[ed] this chapter or any Commission rule, regulation, or order," 7 U.S.C. § 25(b)(2).  Nor do they adequately allege bad faith with respect to any of NFA's alleged

---

[10] The allegations are also false, as NFA returned the $700,000 fine to the bankruptcy estate.  *See In re Peregrine Fin. Grp.*, No. 12-27488, Dkt. 764, at 46 (N.D. Ill. Bankr. Apr. 18, 2013).

misconduct.  Nor do they allege that these alleged illegal NFA actions *caused* the harm of which they complain.  Whatever it was that caused Plaintiffs to lose their life savings in 2008, it was not NFA's supposedly excessive filing fees or its alleged retention of a fine paid by PFG several years later.

### B.   Plaintiffs' Remaining Claims Should Be Dismissed.

In addition to their § 25(b) claim, Plaintiffs plead three additional claims against NFA: "Aiding and abetting Violations of Commodity Exchange Act pursuant to 7 U.S.C. 25(a) and 7 U.S.C. 13 (c)(A)" (Count XVI); "Unjust Enrichment and restitution under Federal and State Law" (Count XXII) and "Intentional Infliction of Emotional Distress and Consequential Damages" (Count XXIII).  Each of these claims should be dismissed.

*Section 25(a) claim.*  Count XVI of Plaintiffs' complaint is "Aiding and abetting Violations of Commodity Exchange Act pursuant to 7 U.S.C. 25(a) and 7 U.S.C. 13 (c)(A)." Plaintiffs cannot assert that claim against NFA because Plaintiffs' sole cause of action against NFA arises under § 25(b), not § 25(a).

The CEA identifies two private causes of action.  The first applies to "[a]ny person (other than a registered entity or registered futures association)."  7 U.S.C. § 25(a).  The second applies to a "registered entity" or "registered futures association" or any officer of the same.  *Id.* § 25(b)(1)-(3).  Thus, private parties may assert "claims against persons other than registered entities and registered futures associations" under § 25(a), and "claims against those entities and their officers, directors, governors, committee members and employees" under § 25(b).  *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 259 (2d Cir. 2006).  As Plaintiffs repeatedly and correctly state in their complaint, NFA is a "registered futures association."  Compl. ¶¶ 548, 553-55, 616.  Thus, Plaintiffs' sole cause of action against NFA arises under § 25(b), and Plaintiffs may not assert a claim against NFA under § 25(a).  *See Grossman v. Citrus Assocs. of the N.Y.*

*Cotton Exch., Inc.*, 706 F. Supp. 221, 228 (S.D.N.Y. 1989) (dismissing § 22(a) claim because "that subsection expressly excludes contract markets and similar organizations . . . whose liability is defined by subsection (b)"), *aff'd*, 927 F.2d 594 (2d Cir. 1991) (unpublished table decision).

> ***Common-law claims***.  Plaintiffs also assert claims for "Unjust Enrichment and restitution under Federal and State Law" (Count XXII) and "Intentional Infliction of Emotional Distress and Consequential Damages" (Count XXIII) against all defendants, including NFA.  To the extent Plaintiffs rely on federal law, Plaintiffs identify no statute or doctrine creating their cause of action.  To the extent Plaintiffs rely on state law, their claims are preempted.  The CEA establishes "a comprehensive regulatory structure to oversee the volatile and esoteric futures trading complex." *Am. Agric. Movement, Inc. v. Bd. of Trade*, 977 F.2d 1147, 1155 (7th Cir. 1992).  Thus, "[w]hen application of state law would directly affect trading on or the operation of a futures market, it would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 1157-58; *see also Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 59 (2d Cir. 1996) (citing *American Agricultural Movement*'s preemption holding with approval), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016).  Consistent with that principle, courts have consistently found that state-law claims directed at the regulatory activities of NFA or other futures associations are preempted.  *See, e.g.*, *Troyer v. Nat'l Futures Ass'n*, No. 1:16-cv-00146-SLC, 2017 WL 2971962, at *12 (N.D. Ind. July 12, 2017) (holding that state-law claim that "directly challenges the NFA's performance of its regulatory functions" is "preempted by the CEA"); *DGM Invs. v. N.Y. Futures Exch., Inc.*, No. 01 CIV. 11602 (RWS), 2002 WL 31356362, at *4-5 (S.D.N.Y. Oct. 17, 2002) (dismissing state-law claims against self-regulatory organization as preempted, and

stating that "[t]hese are matters for uniform federal regulation subject to review by the CFTC");

*W. Capital Design*, 180 F. Supp. 2d at 443 (similar).  Here, Plaintiffs' common-law claims seek

to hold NFA responsible under state law for NFA's regulatory activities.  Thus, they, too, are

preempted.

Additionally, Plaintiffs' common-law claims are barred by the doctrine of absolute

immunity.  "There is no question that an SRO and its officers are entitled to absolute immunity

from private damages suits in connection with the discharge of their regulatory responsibilities."

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir.

2011).  That immunity applies "where the alleged misconduct concerned" "disciplinary

proceedings against exchange members," as well as "the enforcement of security rules and

regulations and general regulatory oversight over exchange members."  *Id.* at 116.  Here, all of

Plaintiffs' common-law claims concern NFA's performance of its regulatory duties.  Therefore,

NFA is immune from those claims.

Moreover, Plaintiffs do not identify any facts supporting their boilerplate unjust

enrichment and intentional infliction of emotional distress claims.  Plaintiffs do not identify any

"obligation imposed by equity to prevent injustice, in the absence of an actual agreement

between the parties," as required to support an unjust enrichment claim.  *Georgia Malone & Co.

v. Rieder*, 19 N.Y.3d 511, 516 (2012); *see CNA Int'l v. Baer*, 981 N.E.2d 441, 452 (Ill. App. 1st

Dist. 2012) (similar).  Nor do Plaintiffs identify conduct on NFA's part that "has been so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," as

required to support an intentional infliction of emotional distress claim.  *Howell v. N.Y. Post Co.*,

81 N.Y.2d 115, 122 (1993); *see Hegy v. Cmty. Counseling Ctr. of Fox Valley*, 158 F. Supp. 2d

892, 897 (N.D. Ill. 2001) (similar).  Thus, those claims fail on the merits as a matter of law.

## CONCLUSION

The motion to dismiss should be granted.

Dated: October 22, 2018                    Respectfully submitted,


                                           NATIONAL FUTURES ASSOCIATION


                             By:    */s/ Gregory M. Boyle*
                                    Gregory M. Boyle
                                    gboyle@jenner.com
                                    Kevin J. Murphy
                                    kmurphy@jenner.com
                                    JENNER & BLOCK LLP
                                    353 N. Clark St.
                                    Chicago, IL 60654
                                    Telephone: (312) 222-9350

                                    Adam G. Unikowsky
                                    aunikowsky@jenner.com
                                    JENNER & BLOCK LLP
                                    1099 New York Ave., N.W.
                                    Suite 900
                                    Washington, DC 20001
                                    Telephone: (202) 639-6000

                                    *Attorneys for Defendant*