# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE BEHRENS, *et al.*, ) | |
| ) | |
| ) | No. 1:16-cv-05508-VSB |
| Plaintiffs, ) | |
| ) | District Judge Vernon Broderick |
| v. ) | |
| ) | |
| JPMORGAN CHASE BANK, N.A., *et al*., ) | |
| ) | |
| ) | |
| Defendants. ) | |

## REPLY IN SUPPORT OF
## MOTION TO DISMISS SECOND AMENDED COMPLAINT
## BY DEFENDANT NATIONAL FUTURES ASSOCIATION

Gregory M. Boyle
gboyle@jenner.com
Kevin J. Murphy
kmurphy@jenner.com
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350

Adam G. Unikowsky
aunikowsky@jenner.com
JENNER & BLOCK LLP
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000

*Attorneys for Defendant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ........................................................................................................................................1

I.      Plaintiffs' Claims Are Time-Barred.................................................................................1

          A.      Plaintiffs' Claims Accrued, At The Latest, By 2012. ...............................................1

          B.      Plaintiffs Have Not Adequately Alleged Fraudulent Concealment. .......................3

II.     Plaintiffs Have Not Stated A Claim For Relief Against NFA. ............................................4

          A.      Plaintiffs Have Not Stated a Claim Under 7 U.S.C. § 25(b). ..................................4

                i.      Plaintiffs Have Not Identified Actionable Acts Or Omissions By NFA ....................................................................................................................5

                ii.     Plaintiffs Have Not Adequately Alleged Bad Faith ....................................7

          B.      Plaintiffs' Common-Law Claims Should Be Dismissed. ......................................10

CONCLUSION ..................................................................................................................................10

i

## TABLE OF AUTHORITIES

**CASES**

*Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49 (2d Cir. 1996), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016) ..................................................................................................10

*Bosco v. Serhant*, 836 F.2d 271 (7th Cir. 1987) ........................................................................8, 9

*Brawer v. Options Clearing Corp.*, 807 F.2d 297 (2d Cir. 1986)..................................................10

*Klein & Co. Futures, Inc. v. Board of Trade of New York*, 464 F.3d 255 (2d Cir. 2006) ..........................................................................................................................................7

*Koch v. Christie's International PLC*, 699 F.3d 141 (2d Cir. 2012) .....................................2, 3, 4

*Levy v. BASF Metals Ltd.*, No. 1:15-cv-7317-GHW, 2017 WL 2533501 (S.D.N.Y. June 9, 2017), *appeal docketed*, No. 17-3823 (2d Cir. Nov. 20, 2017)...................................2

*In re LIBOR-Based Financial Instruments Antitrust Litigation*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013), *vacated on other grounds*, 823 F.3d 759 (2d Cir. 2016) ...............................2

*In re London Silver Fixing, Ltd., Antitrust Litigation*, 213 F. Supp. 3d 530 (S.D.N.Y. 2016) ...................................................................................................................3

*New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065 (2d Cir. 1988)........................................3

*Rotella v. Wood*, 528 U.S. 549 (2000) ...........................................................................................2

*Ryder Energy District Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774 (2d Cir. 1984) ..................................................................................................................................8, 9

*Sam Wong & Son, Inc. v. New York Mercantile Exchange*, 735 F.2d 653 (2d Cir. 1984) .....................................................................................................................................7, 8

*Singh v. Wells*, 445 F. App'x 373 (2d Cir. 2011).............................................................................4

*Troyer v. NFA*, 290 F. Supp. 3d 874 (N.D. Ind. 2018) ...............................................................2, 9

*Troyer v. NFA*, No. 1:16-CV-146, 2017 WL 2971962 (N.D. Ind. July 12, 2017) ....................2, 10

*Western Capital Design, LLC v. New York Mercantile Exchange*, 180 F. Supp. 2d 438 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002) .............................................7, 8, 10

**STATUTES**

7 U.S.C. § 21..................................................................................................................................5

7 U.S.C. § 21(b) ............................................................................................................................7

7 U.S.C. § 25(b) ............................................................................................................................4

7 U.S.C. § 25(b)(2) ...............................................................................................................5, 6, 7

7 U.S.C. § 25(b)(4) ........................................................................................................................7

**NFA B**YLAWS AND **R**ULES

Bylaw 301(a)(ii)(D) ................................................................................................................... 5, 9

Bylaw 301(c)(i) .......................................................................................................................... 5, 6

Code of Arbitration § 6(m) ............................................................................................................ 7

Compliance Rule 2-30 ................................................................................................................... 6

**ARGUMENT**

Plaintiffs' claims against NFA should be dismissed as untimely. All of their claims accrued by 2012, when the Peregrine Financial Group (PFG) fraud at the heart of this case was exposed. Accordingly, all of Plaintiffs' claims are now barred by the applicable statutes of limitations, which range from one to three years. Plaintiffs respond by invoking the label of "fraudulent concealment," but they fail to explain *how* NFA fraudulently concealed any misconduct on its part during the limitations period. It did not.

Plaintiffs also have not stated a claim on the merits. Plaintiffs take issue with various alleged acts and omissions by NFA in regulating its members and then arbitrating disputes. But even taking Plaintiffs' factual allegations as true, they do not add up to a failure by NFA to discharge its statutory duties under the Commodity Exchange Act (CEA)—much less a plausible showing that NFA acted in bad faith. And Plaintiffs' common-law claims are barred by immunity, preempted, and inadequately pleaded. The complaint should be dismissed with prejudice.

**I.   Plaintiffs' Claims Are Time-Barred.**

    **A.   Plaintiffs' Claims Accrued, At The Latest, By 2012.**

Although they principally rely on fraudulent concealment, Plaintiffs briefly suggest that their claims are timely even without any tolling. Opp. 29. Plaintiffs base this argument on the proposition that "the limitations period does not begin to run until [the plaintiffs] have actual or inquiry notice of the injury." *Id.* (quoting *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998)). But that rule does not help Plaintiffs, because they *did* have notice of all of their injuries, at the latest, when PFG's fraud was exposed in 2012. *See* Compl. ¶ 225. Although most of Plaintiffs' claims likely accrued even earlier, *see* MTD 5, even Plaintiffs allege that "by the end of 2012" they "realized" the scope of the fraud they had allegedly suffered. Compl. ¶¶ 713,

1

715; *see id.* ¶ 716 (alleging that "[u]ntil then," Plaintiffs "did not understand the nature of the total conduct" at issue in this case).

Plaintiffs respond that they discovered NFA's alleged *bad faith* only after the district court in *Troyer v. NFA* "showed no Absolute Immunity for NFA" and Plaintiffs conducted a "full review of the records." Opp. 29 (citing *Troyer v. NFA*, No. 1:16-CV-146, 2017 WL 2971962 (N.D. Ind. July 12, 2017)). This theory fails for several reasons. First, and most importantly, notice of NFA's alleged bad faith was not required to start the limitations period at all; only notice of Plaintiffs' *injury* was. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012); *Levy v. BASF Metals Ltd.*, No. 1:15-cv-7317-GHW, 2017 WL 2533501, at *5 (S.D.N.Y. June 9, 2017), *appeal docketed*, No. 17-3823 (2d Cir. Nov. 20, 2017); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 699 (S.D.N.Y. 2013), *vacated on other grounds*, 823 F.3d 759 (2d Cir. 2016). Second, Plaintiffs make no allegation about the *Troyer* decision in their complaint. Third, the *Troyer* court's July 2017 decision in fact *dismissed* the plaintiff's complaint—and, contrary to Plaintiffs' assertion, the court did not reject NFA's absolute-immunity defense (which pertained to state-law claims) at all. *See* 2017 WL 2971962, at *12 n.5.[1]

Fourth, Plaintiffs fail to explain why the facts known to them in 2012 were not enough to put them on inquiry notice of the possibility of a claim against NFA—triggering claim-accrual and requiring Plaintiffs to conduct any necessary "review of the records" (Opp. 29) within the applicable limitations period. *See, e.g.*, *Rotella v. Wood*, 528 U.S. 549, 556 (2000) (explaining that a medical malpractice claim accrues at the time of injury, even though "considerable enquiry

---

[1] Later, in February 2018, the *Troyer* court denied NFA's motion to dismiss an amended complaint. *Troyer v. NFA*, 290 F. Supp. 3d 874 (N.D. Ind. 2018); *see infra* at 9. But that decision also did not address a claim of absolute immunity, and in any event it post-dates Plaintiffs' claims against NFA here, so it could not have put Plaintiffs on notice of their present claims.

2

and investigation may be necessary before [the plaintiff] can make a responsible judgment about the actionability of the unsuccessful treatment he received"). In other words, insofar as Plaintiffs' theory is that NFA is liable for failing to protect them from a third-party fraud, that theory was ripe for investigation as soon as the underlying fraud was known to them. For all of these reasons, Plaintiffs' claims accrued in 2012 at the latest and are now untimely.

### B. Plaintiffs Have Not Adequately Alleged Fraudulent Concealment.

Plaintiffs have not pleaded fraudulent concealment with the particularity required by Rule 9(b).[2] First, Plaintiffs have not adequately alleged that NFA "wrongfully concealed material facts relating to [its] wrongdoing." *Koch*, 699 F.3d at 157. Plaintiffs offer two theories in an effort to meet this element: (1) that NFA's "bad faith conduct" was "self-concealing"; and (2) that NFA concealed facts from Plaintiffs by "float[ing] the argument of Absolute Immunity." Opp. 27-28.

Both theories fail. First, the "self-concealing" exception applies when a fraud, by its nature, involves misrepresentations—such as "[t]he passing off of a sham article as one that is genuine." *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988).[3] By contrast, Plaintiffs do not allege any deceit or misrepresentation by NFA at all, and certainly not with particularity. Rather, they simply allege that NFA failed to exercise its regulatory responsibilities properly, and (in conclusory fashion) that it did so knowingly or with ulterior motives. Opp. 22-27. Second, Plaintiffs' assertion that NFA "float[ed]" an argument about "absolute immunity" is opaque and not based on any allegation in the complaint. Opp. 28. It is possible that Plaintiffs are

---

[2] Plaintiffs refer to "Equitable Tolling[] based on Fraudulent concealment," conflating the two doctrines. Opp. 27. But their discussion makes clear that they are invoking fraudulent concealment, and any argument for equitable tolling would be meritless. *See* MTD 6 n.5.

[3] Plaintiffs describe *Hendrickson* as a case involving SROs (Opp. 27-28), but it was actually about a bid-rigging scheme for highway contracts. Likewise, Plaintiffs mischaracterize *In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530 (S.D.N.Y. 2016), as involving an "SRO's conduct" (Opp. 28); in fact, the cited passage discussed a price-fixing conspiracy among banks.

3

referring to NFA's assertion of an absolute-immunity defense to state-law claims in the *Troyer* litigation—an argument that court never reached in light of its preemption holding. *See supra* at 2 & n.1. In any event, even if Plaintiffs' theory were properly before the Court (which it is not), invoking a well-recognized legal defense is hardly fraudulent concealment. *Accord* MTD 21 (explaining why Plaintiffs' common-law claims are barred by absolute immunity).

Plaintiffs also fail to explain how "the [alleged] concealment prevented [their] discovery of the nature of the claim within the limitations period" and how they "exercised due diligence in pursuing the discovery of the claim during the period [they] seek[ ] to have tolled." *Koch*, 699 F.3d at 157 (quotation marks omitted). In fact, they do not identify any allegations in the complaint that could not equally have been made in 2012.[4] Accordingly, even any hypothetical concealment by NFA during that period could not have interfered with Plaintiffs' pursuit of their claims.

Instead of identifying any necessary facts that NFA covered up, Plaintiffs say that it took "the public filing of the *Troyer v. NFA* case in 2016," together with their own "gather[ing]" and "review[]" of evidence, to make it "apparent [to them] that there was a valid claim against NFA" (Opp. 28). But none of that explains how Plaintiffs were hindered by any purported act *by NFA*. Fraudulent concealment does not apply when, as here, "[the] complaint alleges no specific facts indicating that *defendants prevented* [plaintiffs] from exercising their rights during the limitations period." *Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir. 2011) (emphasis added).

## II. Plaintiffs Have Not Stated A Claim For Relief Against NFA.

### A. Plaintiffs Have Not Stated a Claim Under 7 U.S.C. § 25(b).

Plaintiffs' claims are also fatally flawed on the merits. Their principal claim is that NFA

---

[4] The complaint does make reference to the Berkeley Report (Compl. ¶ 704), which was published on NFA's website in January 2013, *see* MTD 1. But Plaintiffs do not allege that NFA concealed that report or that their claims depend on it. And, in any event, 2013 remains well outside the applicable limitations periods of one, two, and three years. *See* MTD 5.

4

failed to take certain actions that, according to Plaintiffs, could have averted their losses. But none of the actions identified in their brief was actually legally required under the CEA, and in any event Plaintiffs' allegations that NFA "acted in bad faith" are conclusory and legally deficient.

        i.   <u>Plaintiffs Have Not Identified Actionable Acts Or Omissions By NFA.</u>

To state a claim under the CEA, Plaintiffs must first allege that NFA "fail[ed] to enforce any bylaw or rule that is required under [7 U.S.C. § 21]." 7 U.S.C. § 25(b)(2).[5] Plaintiffs appear to identify five alleged failures. None actually involves a failure to enforce a required rule.

***Brewer's NFA Membership***. Plaintiffs suggest that NFA failed to enforce certain provisions of NFA Bylaw 301 because it did not expel Steven Brewer in March 2007. Opp. 6-9. But the relevant provision, Bylaw 301(a)(ii)(D), is unambiguous and does not apply to the circumstances that Plaintiffs allege. The bylaw provides that "no person shall be eligible to become or remain a Member" if that person was "a cause of any suspension, expulsion or *order described in paragraphs (a)(ii)(A)-(C) above* that is in effect with respect to the person." NFA Bylaw 301(a)(ii)(D) (emphasis added). That cited class of orders, in turn, includes certain suspensions and expulsions; orders barring a person from associating with all members of a futures association; and certain disciplinary orders issued by the CFTC itself. *Id.* Thus, Plaintiffs' allegation that NFA unlawfully failed to enforce Bylaw 301(a)(ii)(D) in 2007 necessarily depends on an allegation that Brewer was, at that time, subject to such an order. But Plaintiffs make no such allegation; instead, they rest their claim on a prior NFA disciplinary order that fined Brewer and imposed certain other restrictions. *See* Opp. 6 & exh. 6. By its plain terms, that order does *not* fit in the class defined by Bylaw 301(a)(ii)(D). Thus, the bylaw did not apply.[6]

---

[5] The statute also covers certain affirmative acts that violate the CEA or a CFTC order, *see* 7 U.S.C. § 25(b)(2), but Plaintiffs' claims do not appear to rest on that portion of the statute. *See* Opp. 5.

[6] Plaintiffs also briefly invoke Bylaw 301(c)(i). Opp. 8-9. But that bylaw provides only that a

5

*Failure To Require Warnings*.  Plaintiffs next suggest that NFA "did not enforce Compliance Rule 2-30 according to its Interpretative Notice 9013," because NFA allegedly failed to require PFG and others to warn Plaintiffs about the very poor prospects of "out-of-the money naked puts and calls."  Opp. 9.  This theory is not advanced in the complaint and should be disregarded for that reason.[7]  In any event, Plaintiffs do not identify any facts suggesting that NFA failed to take any legally required enforcement action in this regard.  In fact, insofar as they explain their new (and waived) theory at all, they assert that PFG's customer agreement did acknowledge that the odds of success on the relevant options were "remote."  *Id.*

*Failure To Enforce Against Comeau.*  Plaintiffs briefly suggest that NFA "fail[ed] to enforce compliance rules 2-2, 2-4, 2-10, 2-29, and 2-30 against Perry Comeau."  Opp. 12.  Once again, this assertion is supported by no citation to the complaint, and the complaint mentions each of these rules either only in passing or not at all.  Even Plaintiffs' brief (which cannot substitute for allegations in the complaint) fails to identify the relevant provisions of "the above-listed rules," specify how Comeau's "conduct [was] violative of [them]," or explain how NFA "was on actual and constructive notice" of that asserted fact.  *Id.*

*Under-inclusive Definition of "Associate."*  Plaintiffs next argue that NFA "defines an 'Associate' much more narrowly" than (in Plaintiffs' view) Congress and the CFTC intended.  Opp. 13-14.  According to Plaintiffs, this definition means that various NFA rules, by their terms, apply too narrowly.  *See id*. at 16 n.19.  But this claim is not cognizable under 7 U.S.C. § 25(b)(2)

---

person "may" be deemed disqualified from membership if "a prior registration under the [CEA] of such person" has been suspended or revoked.  NFA Bylaw 301(c)(i).  Plaintiffs do not allege that, as of 2007, Brewer's registration under the CEA had ever been suspended or revoked.  The order they cite and furnish did not have that effect or purport to do so.  *See* Opp., exh. 6.

[7] The complaint mentions Rule 2-30 once in describing alleged wrongful acts by defendant Perry Comeau (Compl. ¶ 205), but it never suggests that this rule underlies any CEA claim against NFA, and it never mentions Interpretive Notice 9013 at all.

6

at all, because it is not taking issue with NFA's failure to *enforce* a rule (or with its manner of *enforcing* a rule), but with the rules themselves. Congress directed the *CFTC* to assess the adequacy of a futures association's rules, and to register the association only if the rules are satisfactory. 7 U.S.C. § 21(b). It did not provide a cause of action for private plaintiffs to second-guess those judgments. *See Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 259 (2d Cir. 2006).

***Failure To Provide a Fair Arbitration***. Finally, Plaintiffs argue that NFA did not provide "a fair arbitral forum" for Plaintiffs' claims. Opp. 18-22. This claim is barred by NFA's arbitral immunity—a point Plaintiffs ignore. *See* MTD 17-18. Regardless, Plaintiffs once again fail to identify a required rule that NFA failed to enforce. Plaintiffs focus the most attention on Section 6(m) of NFA's Code of Arbitration, which provides that arbitral proceedings "may" be consolidated. Opp. 18-20. Plaintiffs do not explain how NFA, by "not exercising its discretion to consolidate" (Opp. 18), failed to enforce (or illegally enforced) a rule expressly providing for such discretion. Finally, NFA is liable only for certain "actual losses that resulted from [a futures] transaction." 7 U.S.C. § 25(b)(2). Plaintiffs cannot plausibly allege that they suffered any such trading losses on account of procedural decisions in a later arbitration.

ii.  Plaintiffs Have Not Adequately Alleged Bad Faith.

Even if Plaintiffs had identified an actionable act or omission by NFA, they would also be required to allege that NFA "acted in bad faith." 7 U.S.C. § 25(b)(4). This requirement is a "special pleading rule" that is "strictly applied." *W. Capital Design, LLC v. N.Y. Mercantile Exch.*, 180 F. Supp. 2d 438, 441-42 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002). As NFA has explained, the requirement reflects Congress' recognition that self-regulatory organizations "must be able to police the markets effectively with the broad discretion accorded by Congress." *Sam*

*Wong & Son, Inc. v. N.Y. Mercantile Exch.*, 735 F.2d 653, 677 (2d Cir. 1984); *see* MTD 14-15.

To plead bad faith, Plaintiffs must allege "first, that [NFA] acted or failed to act with knowledge; and second, that [NFA's] action or inaction was the result of an ulterior motive." *Ryder Energy Distri. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 780 (2d Cir. 1984). Plaintiffs do not plausibly (let alone particularly, *see* MTD 14 n.9) allege either element.

First, Plaintiffs have not plausibly alleged that NFA knew of any misconduct against which it allegedly failed to enforce its rules. For example, Plaintiffs offer no factual allegations plausibly suggesting that NFA *knew* that PFG or others had failed to give Plaintiffs allegedly required warnings about their investments. (In fact, this theory is not raised in the complaint at all, *see supra* at 6.) At the very most, Plaintiffs have alleged that NFA showed "negligent inattention" to the possibility of misconduct, but that is categorically insufficient to establish bad faith. *W. Capital Design*, 180 F. Supp. 2d at 442; *see* Compl. ¶ 545 (alleging generally a "bad faith, intentional, reckless and/or negligent failure to protect the members of the investing public").

Rather than pointing to factual allegations about knowledge, Plaintiffs argue for "a negligence standard." Opp. 16. That would deprive the term "bad faith" of all meaning, and it is contrary to controlling authority in this circuit. *See, e.g.*, *Ryder Energy*, 748 F.2d at 780; *Sam Wong*, 735 F.2d at 671; *accord W. Capital Design*, 180 F. Supp. 2d at 442. Plaintiffs' argument (Opp. 8, 16) depends on *Bosco v. Serhant*, 836 F.2d 271 (7th Cir. 1987), where the Seventh Circuit suggested that the bad-faith standard might be relaxed in cases where "there was no scope for the exercise of discretion." *Id.* 278; *see id.* at 277. But that is not the law in the Second Circuit, so the distinction drawn in *Bosco* is irrelevant here. *See, e.g.*, *Ryder*, 748 F.2d at 780.[8]

---

[8] Nor would *Bosco* help Plaintiffs regardless. All of the actions that NFA allegedly performed here involved discretionary judgments (such as the decision not to consolidate distinct arbitrations, *see supra* at 7). And all of the actions it allegedly *failed* to take either involved discretion (such

8

Plaintiffs' reliance (Opp. 2, 7-8, 9, 23) on *Troyer v. NFA*, 290 F. Supp. 3d 874 (N.D. Ind. 2018), is misguided for the same reason. Applying *Bosco*, the *Troyer* court denied a motion to dismiss after concluding that the plaintiff had adequately alleged a specific, nondiscretionary violation of NFA's own rules. *See* 290 F. Supp. 3d at 884. In particular, according to allegations that the court found plausible, NFA had "admitted knowledge" of a person's past association with a previously expelled firm—a fact that was disqualifying for membership, absent special findings that were never made, under Bylaw 301(e). *Id.* As explained above, Plaintiffs' allegations here fail to identify any analogous failure to enforce a rule (regarding membership or otherwise). *See supra* at 5-7. Nor has NFA admitted knowledge of any alleged misconduct underlying Plaintiffs' complaint at the time of NFA's alleged failures to enforce. Thus, *Troyer*—in addition to applying a circuit precedent at odds with controlling authority here—is inapposite on its own terms.

Moreover, even if Plaintiffs had adequately alleged knowledge here, dismissal would still be required because Plaintiffs have not pleaded a cognizable "ulterior motive" for NFA's alleged failures to regulate. *Ryder*, 748 F.2d at 780; *see* MTD 15-17. In response, Plaintiffs argue that NFA had an ulterior motive because it receives transaction-based "Assessment Fees," which can be earned whether a transaction is "fraudulent or not" (Opp. 23). But such fees are never mentioned in the complaint and therefore are irrelevant here. *Cf.* MTD 16-17 (explaining why the only "ulterior motive" allegation actually in the complaint—regarding the levying of *fines* for misconduct—is inadequate). In any event, a claim of ulterior motive based on a generic interest

---

as determining the adequacy of a risk disclosure on particular facts, *see supra* at 6), or even worse for Plaintiffs, would not have been permitted by the relevant rules (such as expelling a member who was not subject to a prior order covered by Bylaw 301(a)(ii)(D), *see supra* at 5). Thus, because *Bosco* expressly recognizes that "[t]he test is different" if "the exchange [allegedly] injures a trader through the exercise of a discretionary power," 836 F.2d at 278, the traditional bad-faith standard—which applies across-the-board in the Second Circuit—would apply to the claims at issue here in the Seventh Circuit as well.

in transaction fees is plainly insufficient.  As the Second Circuit said of a substantially more tailored bad-faith charge: "[I]f such a degree of self-interest were allowed to demonstrate bad faith, then … board members would inevitably be subject to bad-faith charges, and the concept of … self-regulation would be undermined."  *Brawer v. Options Clearing Corp.*, 807 F.2d 297, 303 (2d Cir. 1986) (alteration omitted); *accord W. Capital Design*, 180 F. Supp. 2d at 442.

### B.  Plaintiffs' Common-Law Claims Should Be Dismissed.

Finally, Plaintiffs' common-law claims are preempted, barred by immunity, and inadequately pleaded.  *See* MTD 20-22.[9]  Plaintiffs address only preemption, and they cite only a decades-old case allowing an antitrust claim against *commodities traders* to proceed.  Opp. 30 (citing *Strax v. Commodity Exch. Inc.*, 524 F. Supp. 936 (S.D.N.Y. 1981)).  By contrast, claims—like Plaintiffs'—that "directly challenge[] the NFA's performance of its regulatory functions" are "preempted by the CEA."  *Troyer*, 2017 WL 2971962, at *12; *see Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 59 (2d Cir. 1996), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016); MTD 20-21 (collecting authority).  For that and the other reasons explained in NFA's motion, the common-law claims should be dismissed.

### CONCLUSION

The motion to dismiss should be granted.


Dated: February 4, 2019                           Respectfully submitted,

                                                  By:   */s/ Gregory M. Boyle*
                                                        *Attorney for Defendant*

---

[9] Plaintiffs "withdraw" their aiding-and-abetting claim against NFA.  Opp. 1 n.1.